United States District Court

For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8   CURTIS WESTLEY, *et al.*,                    No. C-11-2448 EMC

9              Plaintiffs,

10       v.                                     **ORDER GRANTING DEFENDANTS'**
                                                **MOTION TO DISMISS**
11  OCLARO, INC., *et al.*,
                                                **(Docket No. 44)**
12             Defendants.

13  _____/

14

15       Plaintiffs have filed suit against Oclaro, Inc. and two of its officers (Alain Couder and Jerry

16  Turin) for violations of the federal securities laws, more specifically, § 10(b), Rule 10b-5, and §

17  20(a) of the Securities Exchange Act of 1934.[1]  In essence, Plaintiffs charge Defendants with making

18  false and misleading statements about Oclaro's customer demand.  *See* FAC ¶ 2.  Currently pending

19  before the Court is Defendants' motion to dismiss.  Having considered the parties' briefs and

20  accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS**

21  Defendants' motion but gives Plaintiffs leave to amend.

22                          **I.   DISCUSSION**

23  A.    Legal Standard

24       Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

25  failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

26

27  _____

28       [1] Oclaro is a company that "provides optical components, modules and subsystems to the
    telecommunications market."  FAC ¶ 18.  During the relevant period, Mr. Couder was Oclaro's CEO
    and Mr. Turin was Oclaro's CFO.  *See* FAC ¶¶ 20-21.

1  dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

2  *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In ruling on a motion to dismiss, a

3  court may consider not only the complaint itself but also documents incorporated into the complaint

4  by reference and matters of which a court may take judicial notice.  *See Zucco Partners, LLC v.*

5  *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

6        In considering a motion to dismiss, a court must take all allegations of material fact as true

7  and construe them in the light most favorable to the nonmoving party, although "conclusory

8  allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."

9  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain

10  detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible

11  on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that

12  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

13  alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550

14  U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it

15  asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

16        Because Plaintiffs have brought securities fraud claims, Rule 12(b)(6) is not the only

17  governing legal standard; so too are Rule 9(b) and the Private Securities Litigation Reform Act

18  ("PSLRA").  Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with

19  particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  As for the

20  PSLRA, it requires that a plaintiff alleging securities fraud

21      "plead with particularity both falsity and scienter."  Thus, to properly
    allege falsity, a securities fraud complaint must now "specify each

22      statement alleged to have been misleading, the reason or reasons why
    the statement is misleading, and, if an allegation regarding the

23      statement or omission is made on information and belief, . . . state with
    particularity all facts on which that belief is formed."  To adequately

24      plead scienter, the complaint must now "state with particularity facts
    giving rise to a strong inference that the defendant acted with the

25      required state of mind."

26  *Zucco*, 552 F.3d at 990-91.

27  ///

28  ///

2

**United States District Court**
For the Northern District of California

B.     Statements in May and June 2010

Plaintiffs allege that, in May and June 2010, Oclaro made statements about strong current customer demand.  According to Plaintiffs, these statements were false because, in fact, just in April 2010, Oclaro had experienced demand/order softness.  Plaintiffs assert that Oclaro was especially motivated to make the false statement in May because it wanted "to maintain the appearance of [a] strong current and prospective financial condition and thus secure [millions] from [a public] Offering [of stock] to enable [Oclaro] to [get] cash proceeds to make strategic investments and to acquire [a company with certain technology]."  FAC ¶ 29.  Ultimately, on May 12, 2010, Oclaro completed the offering and netted proceeds of approximately $77.2 million.  *See* FAC ¶ 4.

The Court concludes that Plaintiffs have failed to adequately plead falsity.  Although Mr. Turin admitted in July 2010 that Oclaro "saw a little bit of a slowdown in early April," FAC ¶ 58, without some indication that that slowdown was significant in some way, Defendants cannot fairly be charged with a fraudulent failure to disclose such in May and June.  As the complaint currently stands, there is essentially no indication that the slowdown was significant or material.  For example, the slowdown was only for "a little bit."  FAC ¶ 58.  Furthermore, it appears that there was a slowdown only from "the huge order flow [that Oclaro had] in March."  FAC ¶ 58.  There is nothing to indicate that the slowdown meant that Oclaro's order levels had, *e.g.*, dropped below normal or was instead a drop relative to an unusually strong March.  This is particularly true since it appears that the performance for the entire quarter met expectation.

Accordingly, the Court dismisses the fraud claims based on the May and June 2010 statements without prejudice.

C.     Statements in July and August 2010

Plaintiffs allege that, in July and August 2010, Oclaro continued to make statements about strong customer demand.  Plaintiffs further allege that, during this time, Oclaro made predictions as to how it would fare in 1Q11, based in essence on the customer demand.  As above, the Court concludes that Plaintiffs have failed to adequately plead falsity.  As the complaint is framed, Plaintiffs' explanation of falsity, *see* FAC ¶ 67, is confusing.  It is not clear, for example, whether Plaintiffs are claiming that the representations of strong customer demand were false because at the

1    time there had already been significant order cancellations.  It also is unclear whether Plaintiffs are

2    asserting that Oclaro misrepresented that it had customer visibility into customer demand when in

3    fact it did not.

4        The Court therefore dismisses without prejudice the fraud claims based on the July and

5    August 2010 statements.  Although it dismisses these claims, the Court notes that it does not agree

6    with Defendants' position that, to cure the above deficiency, Plaintiffs must allege which specific

7    orders were being canceled.  Defendants cite *Kuehbeck v. Genesis Microchip, Inc.*, No. C 02-05344

8    JSW, 2005 WL 1787426 (N.D. Cal. July 27, 2005), but this decision has been designated "NOT

9    FOR PUBLICATION" and therefore may not be cited as persuasive authority.  Furthermore, so long

10   as, *e.g.*, Plaintiffs can point to significant order cancellations known at the time of the allegedly false

11   representations, there is no reason why they should have to specify the exact order cancellations.

12   D.    Statements in September 2010

13       Plaintiffs allege that, in September 2010, at a conference in Torino, Italy, Oclaro made false

14   and misleading statements about a strong financial forecast when, in fact, shortly before the

15   conference, customers were correcting their inventories and canceling orders.  *See* FAC ¶ 69.

16       The Court dismisses the fraud claim based on the September 2010 statements because the

17   statements at issue were actually made by an analyst, not Oclaro, and there is insufficient

18   information to indicate that those statements may be attributed to Oclaro.

19       Plaintiffs admit that the statements were actually made by analyst (Auriga) but argue that all

20   that the analyst was doing was repeat what Oclaro had stated at the conference.  In support of this

21   position, Plaintiffs rely on *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226

22   (9th Cir. 2004), where the Ninth Circuit held as follows: "[W]hen statements in analysts' reports

23   clearly originated from the defendants, and do not represent a third party's projection, interpretation,

24   or impression, the statements may be held to be actionable even if they are not exact quotations."  *Id.*

25   at 1235.  In response, Defendants argue that Auriga did reframe in vague and impressionistic terms

26   Oclaro's statements and did not simply repeat what Oclaro had said.

27       The case law on what constitutes nonactionable repackaging by an analyst is somewhat

28   limited.  In *Oracle*, "analysts for Salomon Smith Barney reported, 'Oracle sees robust demand for

United States District Court

For the Northern District of California

1  both its database and applications business.  Specifically, Sanderson [an Oracle officer] noted

2  demand for ERP is surprisingly robust while advanced planning and scheduling, CRM, and SCM

3  products are also doing well.'"  *Id.* at 1234.  The district court held that this statement was not pled

4  with sufficient particularity because, "[r]ather than indicating what the defendants themselves said,

5  the statements were an analyst's interpretation of what the defendants actually said during an

6  interview."  *Id.*  On appeal, the Ninth Circuit disagreed.  The court indicated that paraphrases of a

7  company's statements – rather than direct quotations – are permissible; what is not permissible is

8  "repackag[ing]" of the company's statements or reframing of the company's statements in "'vague

9  and impressionistic terms.'"  *Id.*  "Here, Plaintiffs do not repackage Oracle's statements themselves;

10  nor do the analysts they quote appear to have re-framed Oracle's statements 'in vague and

11  impressionistic terms.'  Indeed, Oracle acknowledges that the analysts' reports 'simply repeat' other

12  statements at issue in this litigation that were quoted directly."  *Id.*

13       In reaching the above conclusion, the Ninth Circuit cited approvingly *Wenger v. Lumisys,*

14  *Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998) (Whyte, J.), where there was a "'repackaging [of]

15  defendants' actual oral statements in vague and impressionistic terms.'"  *Oracle*, 380 F.3d at 1234.

16  In *Wenger*, the plaintiff provided in his complaint "a number of paraphrased statements taken from

17  three oral presentations."  *Wenger*, 2 F. Supp. 2d at 1246.

18       For example, plaintiff characterizes Weiss and Klosterman [individual
        defendants] as representing that Lumisys' business was performing
19       very well and ahead of plan, with strong demand for its core digitizer
        products, that Imagraph's Imascan Precision product was succeeding
20       and selling well, that Imagraph was successfully developing the ICE
        Clarity, which would contribute to strong 1996 revenue growth for
21       Lumisys, that Imagraph was doing very well, that Lumisys'
        investment in Drastic was succeeding, and that Drastic's digital video
22       recorder was doing well in BETA testing.

23  *Id.*  Judge Whyte of this District held that the plaintiff's allegations failed to provide the specificity

24  required by Rule 9(b) and the PSLRA:

25       Rather than "stating with particularity" the content of the alleged
        fraud, pursuant to Fed. R. Civ. P. 9(b), and "specifying each statement
26       alleged to have been misleading," as required by the [PSLRA], 15
        U.S.C. 78u-4(b)(1), plaintiff repackages defendants' actual oral
27       statements in vague and impressionistic terms.  Plaintiff does not
        allege that Weiss or Klosterman *actually* said that the Imascan
28       Precision "was succeeding" or "was selling well," or that "Imagraph

5

United States District Court
For the Northern District of California

was successfully developing ICE Clarity," or that "Imagraph is doing very well," or that "Lumisys' investment in Drastic was succeeding," or that "Drastic's digital video recorder was doing well in BETA testing," or that "Lumisys enjoyed strong demand for its core film digitizer products."  What did Weiss and Klosterman actually say about Imagraph, Imascan Precision, ICE Clarity, Drastic, or product demand?  Plaintiff does not inform us.

Courts hold this impressionistic approach to pleading fraud deficient. *See, e.g.*, *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178-79 (5th Cir. 1997) (complaint that alleged defendant's representative had orally "encouraged the perception of a landfill crisis," but did not allege the specific content of those oral statements, insufficient under Rule 9(b)); *In re Alliance North American Government Income Trust, Inc. Sec. Litig.*, 1996 U.S. Dist. LEXIS 14209, 1996 WL 551732, *10 (S.D.N.Y. 1996) (complaint that alleged recorded statements made available through an 800 number "reassured investors that the assets of the Fund were secure," but did not allege the specific statements made through the 800 number, insufficient under Rule 9(b)).  While paraphrased portrayals of oral statements may suffice where the statements' content concerns *specific matters* (*i.e.*, "the seller said the house had new copper plumbing"), a purchaser's bare impression of an unspecified oral statement (*i.e.*, "the seller told me the house was good") is inadequate under Rule 9(b) and the Reform Act. The statements discussed here fall into the latter category and must be dismissed.

*Id.* at 1246-47 (first emphasis in original; second emphasis added).

In *In re LeapFrog Enters., Inc. Securities Litigation*, 527 F. Supp. 2d 1033 (N.D. Cal. 2007), Judge Whyte again found a problem with the plaintiffs' allegations.

Here, the analyst statements alleged by plaintiffs are more akin to the statements in *Wenger* where the analyst "repackaged" defendants' statements in "vague and impressionistic terms" rather than the mere reporting of defendants' actual statements as in *Oracle*.  For example, plaintiffs allege that the Bear Stearns analyst stated, *inter alia*, "[o]ur recent meetings with management of LeapFrog enhanced our conviction that the second half of the year will be a blow out and the company's long-term prospects remain bright," (2) "sales momentum remains strong," (3) "[m]anagement was nonchalant over Mattel's launch of its competing product," and (4) "management also believe[s] [Mattel's PowerTouch] could have a positive impact.  Mattel's marketing spend will surely elevate consumer awareness and potentially draw buyers into stores which could, in fact, stir sales of the LeapPad or other LeapFrog products which tend to show better at retail."  None of these statements appears to be a repeat of what management actually said to the Bear Stearns analyst, nor do plaintiffs so allege.  Finally, although factual allegations that defendants provided information to analysts may present an issue for the trier of fact, plaintiffs do not allege facts supporting a showing that defendants provided the specific information relayed by the analysts.  Plaintiffs only assert that is the case in a conclusory manner.

1    *Id.* at 1051-52.

2         In contrast, in *In re Dura Pharm., Inc. Securities Litigation*, 548 F. Supp. 2d 1126 (S.D. Cal.

3    2008), the court did not find any repackaging of company statements by an analyst.

4             The analyst reports quoted in the FCAC explain that Dura was "on
             track" to begin selling the inhaler in late 1998 and "confirmed" a
5             launch date for the inhaler.  These are the exact statements that Dura
             allegedly made to the analysts in the first instance, rather than the
6             analysts' own projections, interpretations, or impressions.

7    *Id.* at 1138.

8         The instant case falls on the side of *Wenger* and *LeapFrog* rather than *Oracle* and *Dura*.  As

9    alleged by Plaintiffs in the FAC, Auriga stated, in its report on September 21, 2010, as follows:

10            ECOC Review: Bullishness in Optical Sector Abounds

11                The European Conference on Optical Communications
            (ECOC) is under way in Torino, Italy, this week.  We note *continuing*
12            *bullishness from Oclaro* (OCLR, Buy) and Finisar (FNSR, Hold) at
            the show.  We use this note to provide an important technology
13            update.  Although we continue to prefer OCLR to FNSR, both sets of
            management continue to *express strength in their near-terms business*
14            *as well as their longer-term outlook.*

15   FAC ¶ 69 (emphasis added).  These statements by Auriga are hard to characterize as mere reporting

16   back on specific matters as opposed to impressions on unspecified oral statements.  In Judge

17   Whyte's terms, the statements are more akin to "the seller told me the house was good" rather than

18   "the seller said the house had new copper plumbing."

19        The Court thus dismisses without prejudice the fraud claim based on the September 2010

20   statement.

21   E.    Other Issues

22        For the foregoing reasons, the Court dismisses the entirety of Plaintiffs' FAC without

23   prejudice.  Because Plaintiffs' amendment may affect how the Court evaluates, *e.g.*, the safe harbor

24   protection, scienter, and loss causation, the Court does not address those issues which were also

25   briefed by the parties.[2]  The Court also declines to address Defendants' puffery argument as it was

26   made in passing and only in a footnote.  *See* Mot. at 18 n.20.

27   _____

28        [2] Consequently, Defendants' request for judicial notice is essentially moot.

## II.   CONCLUSION

Defendants' motion to dismiss is granted in its entirety.  The dismissal is without prejudice.
Plaintiffs have thirty (30) days from the date of this order to file an amended complaint.  If no
amended complaint is timely filed, then the Clerk of the Court shall enter judgment and close the file
in this case.

This order disposes of Docket No. 44.


IT IS SO ORDERED.


Dated: March 27, 2012

_____
EDWARD M. CHEN
United States District Judge