United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS WESTLEY, *et al.*, | No. C-11-2448 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |
| OCLARO, INC., *et al.*, | |
| Defendants. | **(Docket No. 81)** |
| _____/ | |

Plaintiffs have filed suit against Oclaro, Inc. and two if its officers (Alain Couder and Jerry Turin) for violations of the federal securities laws, more specifically, § 10(b), Rule 10b-5, and § 20(a) of the Securities Exchange Act of 1934.  Previously, the Court granted Defendants' motion to dismiss Plaintiffs' second amended complaint ("SAC").  While the Court rejected Defendants' argument that the SAC failed to sufficiently allege falsity and loss causation and further rejected Defendants' argument that, as a matter of law, their conduct was immunized by the safe harbor provision or the bespeaks caution doctrine, the Court found that Plaintiffs failed to sufficiently allege facts establishing a strong inference of scienter.  *See* Docket No. 79 (Order at 35).  The Court thus dismissed the SAC but gave Plaintiffs one final opportunity to amend.  Approximately two weeks later, Plaintiffs filed a motion for leave to file a motion for reconsideration of the Court's dismissal order.  Subsequently, the Court ordered briefing on the motion and set the motion for hearing.

Having considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' motion for leave to file a motion for

reconsideration.  To the extent the Court has granted the motion for leave to file a motion for

reconsideration, Plaintiffs' motion to reconsider is also **GRANTED**.

## I.   DISCUSSION

A.   Legal Standard

Civil Local Rule 7-9(b) provides as follows:

> A motion for leave to file a motion for reconsideration must be made
> in accordance with the requirements of Civil L.R. 7-9.  The moving
> party must specifically show:
>
> (1)   That at the time of the motion for leave, a material difference
>       in fact or law exists from that which was presented to the Court
>       before entry of the interlocutory order for which
>       reconsideration is sought.  The party also must show that in the
>       exercise of reasonable diligence the party applying for
>       reconsideration did not know such fact or law at the time of the
>       interlocutory order; or
>
> (2)   The emergence of new material facts or a change of law
>       occurring after the time of such order; or
>
> (3)   A manifest failure by the Court to consider material facts or
>       dispositive legal arguments which were presented to the Court
>       before such interlocutory order.

Civ. L.R. 7-9(b).  In the instant case, Plaintiffs seem to rely on (3) as the basis for their motion.

According to Plaintiffs, the Court's dismissal order "contains a number of manifestly erroneous

inconsistencies of law and fact that justify the Court's grant of the requested leave and

reconsideration."  Mot. at 2.

B.   July/August 2010 Statements

Most, though not all, of Plaintiffs' arguments focus on a claimed error by the Court with

respect to its analysis of the May/June 2010 statements instead of the July/August 2010 statements.

Before the Court turns to the May/June 2010 statements, it addresses briefly the arguments presented

with respect to the July/August 2010 statements.

As stated in the Court's dismissal order, "the July and August 2010 statements turn on the

alleged falsity of Defendants' claim that they had good visibility into customers' needs."  Docket

No. 76 (Order at 28).  With respect to the scienter requirement for the July/August statements,

Plaintiffs make limited arguments.  First, they criticize the Court's statement that "Plaintiffs have

**United States District Court**
For the Northern District of California

2

United States District Court

For the Northern District of California

1    essentially assumed that the individual defendants were experienced in the industry by virtue of their

2    position alone." Docket No. 76 (Order at 29). Second, they criticize the Court's statement that

3    Defendants' statements in July/August "were not so dramatically misleading or outright false that

4    the only reasonable inference is that Defendants must have possessed the requisite intent in making

5    them. The statements were somewhat general and, if they were misleading, they were not starkly

6    so." Docket No. 76 (Order at 29).

7            Neither of Plaintiffs' positions is persuasive – especially given that Plaintiffs must establish

8    manifest error in order for their motion for leave to file a motion for reconsideration to be granted.

9    First, even if Mr. Couder was a director and CEO since 2007 and Oclaro's chief spokesperson, *see*

10   Mot. at 14, that does not necessarily show that he knowingly or recklessly misrepresented that

11   Defendants had good visibility into customer needs. As the Court noted in its order: "While it is a

12   fair inference that an executive would know of certain facts related to a company, *e.g.*, a major loss

13   to the company . . . , it is not clear that an executive would necessarily know details such as

14   precisely how far out in advance Oclaro knew of customer needs." Docket No. 76 (Order at 29). As

15   for the Court's statement that the July/August statements were not obviously false, that is a fair

16   consideration under Ninth Circuit law. The Ninth Circuit has expressly noted that "reporting false

17   information will only be indicative of scienter where the falsity is *patently obvious*." *Zucco*

18   *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009) (emphasis added). Although

19   *Zucco* involved a different situation,[1] the point in *Zucco* – equally applicable here – is that falsity in

20   and of itself does not establish scienter, and scienter may readily be inferred where there is obvious

21   falsity.

22           Accordingly, to the extent Plaintiffs ask for leave to file a motion for reconsideration on the

23   July/August 2010 statements, the motion is denied.

24   ///

25   ///

26

27          [1] In *Zucco*, the issue for the Ninth Circuit was whether "the facts [are] prominent enough
     that it would be absurd to suggest that top management was unaware of them." *Zucco*, 552 F.3d at
28   1001 (internal quotation marks omitted).

B.     May/June 2010 Statements

As noted in the Court's dismissal order, "Plaintiffs assert that Defendants made false and misleading statements in May and June 2010 by referring to strong current customer demand when, in fact, just in April 2010, Oclaro had experienced a slowdown in such demand."  Docket No. 79 (Order at 7-8).

As to the May/June 2010 statements, Plaintiffs argue that the Court made a number of errors in analyzing the scienter requirement.  Many of Plaintiffs' arguments are without merit.  For example, nowhere in its dismissal order did the Court require Plaintiffs to prove actual knowledge rather than mere recklessness in support of scienter.  *See, e.g.*, Docket No. 79 (Order at 22) (stating that "it is not clear whether, *e.g.*, the information about bookings [in the weekly reports] would be presented in such a way that Defendants would recognize a monthly decline or, more to the point, a trend significant enough such that Defendants' representation of a recent increase or surge in customer demand was likely *knowingly or recklessly* false and misleading") (emphasis added).  Nor did the Court state anywhere in its order that Plaintiffs were relying on motive alone to establish scienter.  *See, e.g.*, Docket No. 79 (Order at 21) (taking note of Plaintiffs' contention that Defendants had the requisite scienter based on not only motive but also weekly bookings reports).  And as yet another example, just because falsity and scienter may often be found based on the same set of facts, *see Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (noting that "falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts"), that does not mean that, in each and every case, allegations of falsity are enough to establish a strong inference of scienter.

The Court, however, is persuaded that it erred in failing to adequately credit Plaintiffs' allegations in the SAC that Defendants must have known about the April 2010 downturn – and at or about the time of the downturn – because it was so massive that it would have been absurd for management not to know about it.  *See South Ferry LP v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008) (noting that a core operations theory can be enough to establish scienter where, *e.g.*, a loss is of such magnitude to the company that it would be "'absurd'" for management not to know).

United States District Court

For the Northern District of California

First, there is no dispute that there was a slowdown in April 2010. Defendants have admitted such, *e.g.*, in an analyst conference call. *See, e.g.*, SAC, Ex. 1 (Tr. at 13) (in July 2010 conference call, Mr. Couder admitting that "April [2010] in terms of orders was a little slow").

Second, although Plaintiffs did not expressly allege that the April 2010 downturn was massive in their SAC, they implicitly did so, as Plaintiffs explain in their pending motion:

> A decline in book-to-bill from 1.35 for the quarter end[ing] March 2010 to just above 1.0 for the quarter end[ing] June 2010, particularly given that [] sales in "May and June were very strong," necessarily demonstrates a *massive* decline in sales orders during April 2010. Put simply, the slowdown in April was so quantitatively significant that, despite "very strong" sales in May and June, it dragged the entire quarter's average book-to-bill ratio down from 1.35 to just above 1.0.

Mot. at 7 (emphasis in original); *see also* Reply at 5-6. The Court thus concludes that it is plausible inference that the April downturn must have been quantitatively significant in order for the book-to-bill ratio to have declined from the quarter ending in March to the quarter ending in June, particularly given the representation that there were very strong sales in May and June. And if the April downturn was quantitatively significant, then it is also a plausible inference that upper management was likely aware of that fact at or about the time of the downturn.[2]

There are additional allegations by Plaintiffs which, while insufficient on their own to establish scienter, do lend support to Plaintiffs' assertion. For example, during an analyst conference call, Mr. Turin stated: "[W]e, and from what I gather, a lot of folks in this space and similar spaces maybe saw a little bit of a slowdown in early April as people digested the huge order flow in March." SAC ¶ 9. This statement is an acknowledgment that there was, in fact, a slowdown in April. In their papers, Plaintiffs also argue that this statement is direct evidence of scienter because it shows management's awareness of the April slowdown at the time of the downturn. However, this statement by Mr. Turin is equivocal – *i.e.*, the statement is far from a clear admission

---

[2] In their motion, Plaintiffs correctly point out that the Court made a mistake in stating, in its dismissal order, that "the book-to-bill ratio for April 2010 was still 1, a generally positive indicator of demand," Docket No. 79 (Order at 25). As Plaintiffs note, the book-to-bill ratio was tracked on a quarterly and not a monthly basis. This error is material given it is now evident that April performance was plausibly subpar.

that Mr. Turin had knowledge of the April 2010 downturn *in April*.[3]  "[I]n early April" could simply

describe when the slowdown *took place* and not when the company *saw* the slowdown, especially

since the phrase "in early April" is closest to the word "slowdown" and not "saw."  *Cf. Barnhart v.*

*Thomas*, 540 U.S. 20, 26 (2003) (taking note of "the grammatical 'rule of the last antecedent,'

according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the

noun or phrase that it immediately follows").  Nevertheless, the Court cannot say at this juncture in

the proceedings that Plaintiffs' interpretation of the statement – *i.e.*, the Mr. Turin knew of the April

2010 slowdown *in April* – is without any basis at all, and thus the statement has some additional

probative value to scienter.

There are also allegations in the SAC that Defendants received weekly bookings reports,

which again would indicate contemporaneous knowledge of any slowdown in April.  Here, as above,

the Court emphasizes that these allegations are insufficient on their own to establish scienter,

particularly because Plaintiffs made no concrete allegations in their SAC about the contents of those

reports.  *See In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (stating that "[w]e

would expect that a proper complaint which purports to rely on the existence of internal reports

would contain at least some specifics from those reports *as well as* such facts as may indicate their

reliability"),[4] *abrogated on other grounds as stated in South Ferry*, 542 F.3d at 784.  And contrary

to what Plaintiffs argue, the July 2010 analyst conference call (a transcript of which is attached to

the SAC) hardly makes clear that "'the bookings reports include bookings that identify the decline in

April.'"  Mot. at 5.  Nevertheless, the call suggests that the weekly bookings reports do shed some

---

[3]  To the extent Plaintiffs argue that the Court's order of March 27, 2012, "acknowledged defendants' admission of knowledge," Docket No. 67 (Opp'n at 17); *see also* Mot. at 3, Plaintiffs are incorrect.  The Court's March order only addressed the issue of falsity and did not get into the issue of scienter at all.  *See* Docket No. 58 (Order at 3) ("The Court concludes that Plaintiffs have failed to adequately plead falsity.  Although Mr. Turin admitted in July 2010 that Oclaro 'saw a little bit of a slowdown in early April,' without some indication that that slowdown was significant in some way, Defendants cannot fairly be charged with a fraudulent failure to disclose such in May and June.").  Moreover, as Defendants point out, "[t]he law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction."  *United States v. Smith*, 389 F.3d 944, 948-50 (9th Cir. 2004).  However, Plaintiffs are correct that the Court did not address this "admission" in its order dismissing the SAC.

[4]  The Court thus rejects Plaintiffs' assertion that *Silicon Graphics* is really about "the *reliability* of alleged facts, as opposed to requiring detail."  Mot. at 10 (emphasis in original).

United States District Court

For the Northern District of California

light as to the level of demand that was available on a week by week (perforce a monthly) basis, and thus it has some probative value (albeit limited) on the issue of scienter on the part of management.

Taking a holistic approach in assessing Plaintiffs' scienter allegations, *see In re VeriFone Holdings, Inc. Secs. Litig.*, No. 11-15860, 2012 U.S. App. LEXIS 26133, at *14-17 (9th Cir. Dec. 21, 2012) (noting that scienter allegations must be reviewed holistically, although adding that this does not preclude a court from first looking at the allegations individually and then as a whole "so long as [the court] does not unduly focus on the weakness of individual allegations to the exclusion of the whole picture"); *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (taking note that there is a "holistic approach to assessing scienter"), the Court concludes that it is reasonable to infer that Defendants were aware of the downturn in April 2010 *in April*, *i.e.*, prior to the May/June 2010 statements about strong customer demand.  Most significantly it may reasonably be inferred that the downturn in April was so quantitatively substantial that upper management was likely aware of that fact.  Furthermore, such a substantial downturn would have made the falsity of statements asserting a "current" increase in consumer demand more "patently obvious," *Zucco*, 552 F.3d at 1001); this would be particularly so as to statements made *before* the apparent upturn in sales later in May and June (*i.e.*, statements made in the Prospectus Supplement, dated May 6, 2010). While Plaintiffs' additional allegations of scienter are weaker and insufficient on their own to establish the requisite intent, as a whole, they provide corroborative support to strengthen Plaintiffs' assertion of scienter.

Of course, "[t]o determine whether the plaintiff has alleged facts that give rise to the requisite '*strong* inference' of scienter, a court must consider" not only inferences favoring the plaintiff but also "plausible, nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007) (emphasis added).  "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible.'"  *Id.* at 324.  Ultimately, the question is whether "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.*; *see also Gomperr v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (stating that, "when determining whether plaintiffs

have shown a strong inference of scienter, the court must consider *all* reasonable inferences to be

drawn from the allegations, including inferences unfavorable to the plaintiffs") (emphasis added).

In their opposition papers, Defendants did not provide much substantive briefing on this

issue.  *See* Mehr Decl., Ex. A (chart) (entry addressing argument that "[t]he April 2010 slowdown

was so 'quantitatively' significant that it reduced Oclaro's book-to-bill ratio from 1.35 to just above

1.0"; simply stating that the argument is that it is a "Repeated Argument").  However, at the hearing

on the motion, Defendants articulated for the first time an opposing inference that could be made.

"That opposing inference is that Oclaro was expanding its capacity to fulfill orders, and that the

decline in Oclaro's book-to-bill ratio was caused at least in part by an increase in fulfillment of

orders – the denominator in the book-to-bill ratio."  Docket No. 100 (Defs.' Letter Br. at 1).

Defendants argued that this inference could be made based on statements made by Mr. Couder and

Mr. Turin during an analyst conference call in July 2010 – an exhibit that Plaintiffs attached to their

SAC.

The Court has reviewed the transcript of the analyst conference call.  During the call,

Oclaro's officers did make statements about the company's fulfillment of customer demand.  For

example:

- Mr. Turin: "Our inventories were up $2.5 million this quarter . . . . We've intentionally
  increased our material stocks and are strategically staging more of this stock to be positioned
  to executed on the strong demand we continue to see out there."  SAC, Ex. 1 (Tr. at 3).

- Mr. Turin: "Fixed assets were $37.5 million compared to $34.7 million last quarter.  Our
  CapEx this quarter was approximately $6.2 million, up from $3.7 million last quarter.  This
  is a reflection of our continuing investment towards executing on more of the strong demand
  we see out there."  SAC, Ex. 1 (Tr. at 3).

- Mr. Turin (addressing a question about capacity component availability issues that inhibited
  sales in the prior quarter): "Well, in the big picture, since certainly very similar to March –
  very similar to the March quarter.  In the June quarter we had more demand and we delivered
  to, probably in similar proportions, even though we were able to increase from just over $100
  million in March of $113 million, roughly, in revenue in June with all of that scale added in

United States District Court
For the Northern District of California

1  telecom. So while we certainly delivered a great deal more of the demand, there was still

2  headroom above that and we could have delivered substantially more." SAC, Ex. 1 (Tr. at

3  8).

4  • Mr. Turin: "And as far as having the capacity in place, we continue to invest significantly.

5  We almost doubled our CapEx this quarter. We certain[ly] have significant CapEx in the

6  pipeline. We spent $6.2 million this quarter. I'd be very surprised if we didn't spend at least

7  a million more than that in the next quarter. And we've built up some of the inventory stocks

8  as well. So we're definitely investing toward the increased demand and we believe we'll

9  have the capacity to deliver growing revenues in September and most likely into December

10  too." SAC, Ex. 1 (Tr. at 10).

11  • Mr. Couder: "We have invested more in CapEx the June quarter in such a way that income of

12  capacity we are catching up. . . . [W]e are clearly investing in CapEx and also increasing the

13  capital efficiency, some better testing technology and better manufacturing processes in such

14  a way that in terms of capacity that by the end of the year we should have catch up with the

15  demand." SAC, Ex. 1 (Tr. at 11).

16  But these statements about fulfillment of customer demand are general; they do not indicate

17  with any concreteness that, *e.g.*, fulfillment was outstripping bookings (thus making the denominator

18  in the book-to-bill ratio bigger). Furthermore, the bulk of the statements concern Oclaro's

19  positioning itself *in the future* to be able to fulfill customer demand; the statements do not focus on

20  fulfillment of customer demand either in April 2010 or for the June 2010 quarter generally. Given

21  the above, the Court concludes that the inferences of scienter in favor of Plaintiffs are "cogent and at

22  least as compelling as any opposing inference," *Tellabs*, 551 U.S. at 324, and thus satisfies the

23  requirement of a strong inference of scienter.

24  ## II. CONCLUSION

25  For the foregoing reasons, Plaintiffs' motion for leave to file a motion for reconsideration is

26  granted in part and denied in part. The motion is granted with respect to the May/June statements

27  and denied with respect to the July/August statements. As for Plaintiffs' motion to reconsider with

28  respect to the May/June statements, the motion is granted. Plaintiffs have adequately pled scienter

based in large part on the plausible inference that the April 2010 downturn was significant such that Oclaro management likely knew of it at the time of the May/June statements. This inference in favor of Plaintiffs is as cogent and at least as compelling as the opposing inference proffered by Defendants.

A status conference shall be held on January 29, 2013, at 10:30 a.m. (The status conference set for March 21, 2013, is vacated.) A joint status conference statement shall be filed by January 22, 2013. In the statement, the parties shall address the possibility of limited and focused discovery on the issue of scienter (including the size of the April slowdown), leading to an early motion for summary judgement.

This order disposes of Docket No. 81.


IT IS SO ORDERED.


Dated:  January 10, 2013

_____
EDWARD M. CHEN
United States District Judge