1    ROBBINS GELLER RUDMAN
     & DOWD LLP
2    SHAWN A. WILLIAMS (213113)
   SUNNY S. SARKIS (258073)
3    Post Montgomery Center
   One Montgomery Street, Suite 1800
4    San Francisco, CA  94104
   Telephone:  415/288-4545
5    415/288-4534 (fax)
   shawnw@rgrdlaw.com
6    ssarkis@rgrdlaw.com
       – and –
7    JULIE A. KEARNS (246949)
   655 West Broadway, Suite 1900
8    San Diego, CA  92101
   Telephone:  619/231-1058
9    619/231-7423 (fax)
   jkearns@rgrdlaw.com
10
   Lead Counsel for Plaintiffs
11
   [Additional counsel appear on signature page.]
12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS AND CHARLOTTE WESTLEY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> OCLARO, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

No. C11-02448-EMC
and related consolidated action
(Lead Case No. C11-3176-EMC)
(Derivative Action)

| | |
|---|---|
| In re OCLARO, INC. DERIVATIVE LITIGATION | ) <br> ) <br> ) |

Lead Case No. C11-3176-EMC
(Derivative Action)

| | |
|---|---|
| This Document Relates To: <br><br>     *Westley v. Oclaro, Inc., et al.*, <br>     C11-02448-EMC. | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

DATE:  May 16, 2013
TIME:   1:30 p.m.
COURTROOM:  5, 17th Floor
JUDGE:  Hon. Edward M. Chen

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD............................................................................................4

III.    ARGUMENT ........................................................................................................7

        A.      The TAC's New, Detailed Facts from an Additional Former Employee
                Confirm and Corroborate Plaintiffs' Previously Pleaded Allegations that
                Defendants Knew or Recklessly Disregarded Their July 29 and August 11,
                2010 Statements Were False and Misleading ..........................................7

        B.      Each of Defendants' Statements Held by the Court to Be Materially False
                and Misleading Issued Throughout the Class Period Concerned the
                Common Topic of Customer Demand .................................................12

        C.      The TAC's Additional Motive Allegations Further Support a Strong
                Inference of Scienter ........................................................................13

IV.     PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO AMEND ...............................14

V.      CONCLUSION....................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Bell Atlantic v. Twombly,*

5
    550 U.S. 544 (2007)............................................................................................6

6

*Berson v. Applied Signal Tech., Inc.,*
    527 F.3d 982 (9th Cir. 2008) ........................................................................3, 13

7

*Chavez v. Bank of Am. Corp.,*

8
    No. C-10-0653 JCS, 2012 U.S. Dist. LEXIS 62935
    (N.D. Cal. May 4, 2012) ...................................................................................4

9

*Gonzalez v. Ariz.,*

10
    677 F.3d 383 (9th Cir. 2012) ...........................................................................6

11

*In re Cadence Design Sys., Inc. Sec. Litig.,*

12
    692 F. Supp. 2d 1181 (N.D. Cal. 2010) ..........................................................11

13

*In re Century Aluminum Co. Sec. Litig.,*
    704 F.3d 1119 (9th Cir. 2013) .......................................................................6, 7

14

*In re Century Aluminum,*

15
    No. 11-15599, 2013 U.S. App. LEXIS 7760
    (9th. Cir. Apr. 17, 2013) .................................................................................7

16

*In re Daou Sys.,*

17
    411 F.3d 1006 (9th Cir. 2005) .........................................................................1

18

*In re Diamond Foods, Inc., Sec. Litig.,*

19
    No. C 11-05386 WHA, 2012 U.S. Dist. LEXIS 170704
    (N.D. Cal. Nov. 30, 2012)............................................................................7, 13

20

*In re Gilead Scis. Sec. Litig.,*

21
    536 F.3d 1049 (9th Cir. 2008) ........................................................................13

22

*In re Omnivision Techs. Sec. Litig.,*

23
    No. C-11-5235 RMW, 2013 U.S. Dist. LEXIS 46032
    (N.D. Cal. Mar. 29, 2013) ..............................................................................11

24

*In re Scholastic Corp. Sec. Litig.,*

25
    252 F.3d 63 (2d Cir. 2001)..............................................................................11

26

*In re VeriFone Holdings, Inc. Sec. Litig.,*

27
    704 F.3d 694 (9th Cir. 2012) ............................................................... *passim*

28

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC

1

2                                                                                                    **Page**

3    *Matrixx Initiatives, Inc. v. Siracusano,*

4        _U.S._, 131 S. Ct. 1309 (2011)..........................................................................5, 13

5    *N.M. State Inv. Council v. Ernst & Young LLP,*
         641 F.3d 1089 (9th Cir. 2011) ............................................................................4, 5

6
     *Plotkin v. IP Axess, Inc. Etc.,*
7        407 F.3d 690 (5th Cir. 2005) ..................................................................................11

8    *S. Ferry LP v. Killinger,*
         542 F.3d 776 (9th Cir. 2008) ......................................................................6, 10, 11
9
     *Shaw v. Digital Equip. Corp.,*
10       82 F.3d 1194 (1st Cir. 1996)....................................................................................14

11   *Starr v. BACA,*
12       652 F.3d 1202 (9th Cir. 2011) ..............................................................................6, 7

13   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
         551 U.S. 308 (2007)...........................................................................................4, 5, 6, 7
14
     *Va. Bankshares, Inc. v. Sandberg,*
15       501 U.S. 1083 (1991)..........................................................................................3, 13

16   *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.,*
17       655 F.3d 1039 (9th Cir. 2011),
         *cert. denied*, _U.S._, 132 S. Ct. 2713 (2012).......................................................13
18
     *Zucco Partners, LLC v. Digimarc Corp.,*
19       552 F.3d 981 (9th Cir. 2009) ....................................................................................7

20

21

22

23

24

25

26

27

28

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD        - iii -
AMENDED COMPLAINT - C11-02448-EMC

I.      INTRODUCTION

This Court has undisputedly held that lead plaintiff Connecticut Laborers Pension Fund and named plaintiffs Curtis and Charlotte Westley (collectively, "plaintiffs") have alleged with the requisite particularity under the Private Securities Litigation Reform Act of 1995 ("PSLRA") that defendants[1] made materially false and misleading statements concerning customer demand throughout the May 6, 2010 through October 28, 2010 Class Period.  *See* Order Granting Defendants' Motion to Dismiss Second Amended Complaint, filed September 21, 2012 (Dkt. No. 79) ("September 21 Order") at 7-13.  This Court has further held plaintiffs have alleged with the requisite specificity that defendants acted with scienter when they issued materially false and misleading statements to the market concerning customer demand on May 6, 2010 and June 9, 2010. *See* Order Granting in Part and Denying in Part Plaintiffs' Motion for Leave to File Motion for Reconsideration, filed January 10, 2013 (Dkt. No. 107) ("January 10 Order") at 4-9.  Thus, the only issue to be decided by the Court in considering plaintiffs' Third Amended Complaint for Violation of the Federal Securities Laws, filed March 1, 2013 (Dkt. No. 121) (the "TAC"), is whether the TAC now adequately alleges that defendants' false statements about customer demand on July 29, 2010 and August 11, 2010, which were already found to be materially false and misleading, were made with the requisite scienter.[2]

The Court has held plaintiffs have adequately alleged defendants misled investors in the documents accompanying Oclaro's May 6, 2010 Secondary Offering of common stock by falsely stating the Company was "currently" and "recently" experiencing "increased" customer demand for Oclaro's products.  ¶¶46, 51.[3]  This May 2010 Secondary Offering has been publicly touted by

---

[1] "Defendants," collectively refers to Oclaro, Inc. ("Oclaro" or the "Company") along with Oclaro President, Chief Executive Officer ("CEO") and director Alain Couder ("Couder") and Chief Financial Officer ("CFO") Jerry Turin ("Turin").

[2] To state a §10(b) claim for securities fraud, plaintiffs must adequately allege: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss."  *In re Daou Sys.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

[3] All "¶__" or "¶¶__" references are to the TAC.

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT - C11-02448-EMC                                        - 1 -

Company CFO Turin as "a 're-branding' of Oclaro" (¶28), and the Court has recognized, as part of its scienter analysis, plaintiffs' allegation that defendants were motivated to secure $77 million in artificially inflated proceeds from the May 2010 Secondary Offering so that Oclaro could afford to execute the strategic acquisitions of ClariPhy and Mintera. *See* September 21 Order at 21, 27; January 10 Order at 4.

On the heels of Oclaro's May 2010 Secondary Offering, CFO Turin and CEO Couder notably made efforts to convince investors in June, July and August 2010 that Company executives' close relationships with Oclaro's concentrated pool of customers gave them unique and credible insight into their true needs and demand for the Company's products. Defendants falsely assured investors on June 9, 2010 that they knew, based on these close customer relationships, that the strong, current customer demand was not the product of customers hoarding inventory or double ordering – an explicit analyst concern – and rather represented actual end-user demand. ¶¶53-54.

The Court has already undisputedly held defendants' July 29 and August 11, 2010 statements were materially false and misleading based on the account of a Former Employee ("FE") FE1, a former Executive Vice President of Sales at Oclaro during the relevant period. *See* September 21 Order at 10-13. The Court found plaintiffs alleged enough detail about FE1 to demonstrate he/she was in a position to know about the facts he/she provided. *See id.* at 11-12 ("Defendants fail in any substantive way to establish why FE[1]'s statements are lacking in foundation. . . . Given that FE1 was a former senior vice president responsible for all sales of Oclaro, it is a fair inference that he or she has knowledge about what visibility Oclaro had into customer's needs."); *id.* at 28 ("Plaintiffs have alleged enough to establish that FE1 was in a position within Oclaro with knowledge of Oclaro's sales experiences and practices").

Plaintiffs have added multiple new allegations to the TAC that further support the strong inference defendants acted with scienter when making the misstatements on July 29 and August 11, 2010, as is discussed in further detail infra, including: (1) more substantive allegations by a new witness familiar with Oclaro's sales and customer order practices; (2) more substantive and fulsome allegations concerning defendants' extensive industry experience about which they boasted to the market; (3) more substantive allegations concerning defendants' motive throughout the Class Period;

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                                    - 2 -

1    and (4) allegations confirming defendants' tendency to issue misleading statements – specifically

2    illustrated by Couder's public statement on June 15, 2010 that defendants "ha[d] not seen any

3    slowing down of 40Gbps," which was directly contradicted by his direct report Executive Vice

4    President of Sales Scott Parker in late July 2010, when Parker publicly "conceded that the 40G space

5    has been soft for a few quarters" (*see* ¶¶55, 59) – which defendants conspicuously fail to even

6    mention in their Motion.

7          Significantly, the TAC has added the detailed account of FE2, who worked as Oclaro's

8    Senior Manager of Product Marketing from June 2009 through July 2011, which further supports a

9    strong inference of scienter – namely that defendants knew or deliberately disregarded their

10   statements concerning order coverage and true strength of customer demand were false and

11   misleading.  *See* ¶84(j)-(k).  According to FE2, who participated in monthly forecasting meetings

12   attend by Oclaro executives, "order coverage" – a metric provided to the market by Couder and

13   Turin on July 29 and August 11, 2010 in lieu of "absolute order level" figures requested by analysts

14   – included "blanket orders," which were ***not*** actually firm orders that had been placed by customers.

15   *Id*.  Rather, "blanket orders" were customer commitments to place orders in the future – but were

16   explicitly at heightened risk of cancellations due to "push outs" and "pull ins" clauses in these

17   contracts.  *Id.*  Despite defendants' specific assurances to investors that "order coverage" of 85% to

18   90% was already secured for the "September quarter," this fact was concealed from investors.  *See*

19   ¶¶67, 81; *see also Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1091 (1991) (investors expect

20   corporate executives have knowledge and expertise about the company's business far exceeding the

21   normal investor).[4]  And notably, in the Ninth Circuit, defendants are subject to a heightened duty to

22   ensure they speak truthfully when they choose to publicly discuss specific topics – which, here, is

23   the notion of Oclaro's "order coverage" metric.  *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d

24   982, 987 (9th Cir. 2008).  Deliberately disregarding, or even turning a "blind eye" to whether these

25   _____

26   [4]      Even prior to this addition to the TAC of FE2's specific account, the Court previously held
     plaintiffs' allegations were probative of scienter as to the July and August 2010 misstatements even
27   if they did not quite meet the rigorous PSLRA pleading standards. *See* September 21 Order at 28-29.

28

     CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
     AMENDED COMPLAINT - C11-02448-EMC                                                    - 3 -

1    statements were accurate, adequately establishes scienter in the context of pleading securities fraud.

2    *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012).

3         Furthermore, this Court has held defendants' false statements on July 29 and August 11,

4    2010 caused the Company's share price to remain artificially inflated until defendants' Class Period

5    ending disclosures on October 28, 2010.  *See* September 21 Order at 31-34.[5]  At that time,

6    defendants disclosed facts that stood in sharp contrast to the assurances they had made to investors

7    throughout the Class Period by announcing the Company had missed expectations for 1Q11 EPS by

8    95%, reporting $0.01 per share compared to analyst estimates of $0.22 per share, and that gross

9    margins were 29% as opposed to the analyst consensus of 33%. ¶¶91-92.  Critically, defendants also

10   conceded that "visibility" into the need for Oclaro's products from its customers from both a current

11   demand and forecast perspective, which they previously claimed was known to them based on close

12   relationships with Oclaro's customers, was all of a sudden sharply limited and that the Company's

13   customers' inventories had become bloated and required correction, resulting in order pushouts

14   (delays) and/or cancellations.  ¶¶91, 93, 96-97.

15

16

17   **II.    LEGAL STANDARD**

18         In considering defendants' Motion, the Court "must, as with any motion to dismiss for failure

19   to plead a claim on which relief can be granted, accept all factual allegations in the complaint as

20   true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also N.M. State

21   Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011) (when reviewing a 12(b)(6)

22   motion for failure to state a claim, "we will 'accept the plaintiffs' allegations as true and construe

23   _____

24   [5]     Although defendants "respectfully and emphatically disagree with this Court's ruling that the
     Second Amended Complaint pleads a viable claim as to the May/June statements, or that the Second
25   Amended Complaint adequately pleads the elements of falsity, materiality and loss causation as to
     the July/August statements," and in their Motion "reserve their position and arguments related to
26   those issues" (*see* Defendants' Notice of Motion and Motion to Dismiss the Third Amended
     Complaint for Violation of the Federal Securities Laws and Memorandum of Points and Authorities
27   (Dkt. No. 130) ("Motion" or "MTD") at 1 n.2), the law of the case applies. *See Chavez v. Bank of
     Am. Corp.*, No. C-10-0653 JCS, 2012 U.S. Dist. LEXIS 62935, at *12-*13 (N.D. Cal. May 4, 2012).

28

1  them in the light most favorable to plaintiffs,' and will hold a dismissal inappropriate unless the

2  complaint fails to 'state a claim to relief that is plausible on its face'").[6]  While the PSLRA may have

3  "'significantly altered pleading requirements in private securities fraud litigation,' . . . it did not

4  impose an insurmountable standard." *VeriFone*, 704 F.3d at 708.

5          Scienter as to defendants' materially false and misleading statements made on July 29 and

6  August 11, 2010 can be established by intent or knowledge, but "deliberate recklessness" or

7  "conscious recklessness" also satisfies the standard.  *Id.* at 702-03, 708.  And the Ninth Circuit

8  confirmed just months ago that "[r]ecklessly turning a 'blind eye' to impropriety is equally culpable

9  conduct under Rule 10b-5." *Id.* at 708.  Finally, the Ninth Circuit has also held "complacency" as to

10  the accuracy of defendants' material statements "can be described only as willful at this stage of the

11  pleadings" – and thus can serve to establish a strong inference of scienter.  *VeriFone*, 704 F.3d at

12  706.

13          A "strong inference" of scienter is one that a reasonable person would deem "cogent and at

14  least as compelling as any opposing inference one could draw from the facts alleged," but need not

15  be "the 'most plausible of competing inferences.'"   *Tellabs*, 551 U.S. at 324; *see also Matrixx*

16  *Initiatives, Inc. v. Siracusano*, _U.S._, 131 S. Ct. 1309, 1313 (2011); *VeriFone*, 704 F.3d at 701.

17  The Ninth Circuit recently reiterated the Supreme Court authority set forth in *Tellabs*, stating the

18  "relevant inquiry" in assessing scienter is "'whether *all* of the facts alleged, taken collectively, give

19  rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation,

20  meets that standard.'" *VeriFone*, 704 F.3d at 701 (emphasis in original); *see also N.M. State*, 641

21  F.3d at 1095.  The Ninth Circuit specifically cautioned against "the risk" and "potential pitfalls"

22  involved in analyzing scienter allegations individually, and thus employs "a holistic review of [a

23  complaint's] allegations to determine whether they combine to create a strong inference of

24  intentional conduct or deliberate recklessness."  *VeriFone*, 704 F.3d at 703.  And critically, in

25

26

27  [6]        All internal citations are omitted throughout unless otherwise noted.

28

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                                    - 5 -

1    "assessing [scienter] allegations holistically as required by *Tellabs*, the federal courts certainly need

2    not close their eyes to circumstances that are probative of scienter viewed with a practical and

3    common-sense perspective."  *S. Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

4            Defendants rely on *In re Century Aluminum Co. Sec. Litig.*, 704 F.3d 1119, 1122-23  (9th

5    Cir. 2013) for a standard inconsistent with Supreme Court authority in *Tellabs* as well as binding

6    Ninth Circuit authority.  Defendants cite *Century Aluminum* for the proposition that:

7            "When faced with two possible explanations, only one of which can be true and only
     one of which results in liability, plaintiffs cannot offer allegations that are 'merely
8            consistent with' their favored explanation but are also consistent with the alternative
     explanation.  Something more is needed, such as facts tending to exclude the
9            possibility that the alternative explanation is true, in order to render plaintiffs'
     allegations plausible . . . ."
10

11   *See* MTD at 5.  But as plaintiffs noted in Lead Plaintiff's Response to Defendants' January 4, 2013

12   Statement of Recent Authority (Dkt. No. 104), this isolated statement of law – notably, in a case

13   solely examining the issue of plaintiffs' standing in §11 case – stands in direct contrast with the

14   Ninth Circuit's prior holding in *Starr v. BACA*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) on the

15   identical interpretation of *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007):

16           If there are two alternative explanations, one advanced by defendant and the other
     advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a
17           motion to dismiss under Rule 12(b)(6).  Plaintiff's complaint may be dismissed only
     when defendant's plausible alternative explanation is so convincing that plaintiff's
18           explanation is ***implausible***.  The standard at this stage of the litigation is not that
     plaintiff's explanation must be true or even probable.  The factual allegations of the
19           complaint need only "plausibly suggest an entitlement to relief."  As the Court wrote
     in *Twombly*, Rule 8(a) "***does not impose a probability requirement at the pleading***
20           ***stage***; it simply calls for enough fact to raise a reasonable expectation that discovery
     will reveal evidence" to support the allegations.  Starr's complaint satisfies that
21           standard.

22   *Id*. (emphasis in original).  The prior ruling by the Ninth Circuit in *Starr* interpreting the application

23   of the Supreme Court's ruling in *Twombly* is the law of the circuit and may ***not*** be overruled by the

24   subsequent three judge panel in *Century Aluminum* (*see Gonzalez v. Ariz.*, 677 F.3d 383, 389 n.4

25   (9th Cir. 2012) (the Ninth Circuit, ruling *en banc*, reaffirmed the law of the circuit rule that "a

26   published decision of this Court constitutes binding authority which 'must be followed unless and

27   until overruled by a body competent to do so'")), and because it is inconsistent with *Starr*, the

28   *Century Aluminum* case is not binding on the interpretation of competing inferences under *Twombly*.

*See also Tellabs*, 551 U.S. at 324 n.5, 328-29 (2007) (ties or "as likely" conflicting inferences of scienter are construed in plaintiffs' favor). It therefore comes as no surprise that upon plaintiffs'/appellants' petition for rehearing or rehearing *en banc* as to the *Century Aluminum* opinion – based largely on its irreconcilable inconsistency with the Ninth Circuit's prior *Starr* opinion – the Ninth Circuit ordered defendants/appellees to file a response to the petition. Defendants in *Century Aluminum* filed their response on February 19, 2013; the court has yet to issue a decision on the matter.[7]

## III.  ARGUMENT

### A.  The TAC's New, Detailed Facts from an Additional Former Employee Confirm and Corroborate Plaintiffs' Previously Pleaded Allegations that Defendants Knew or Recklessly Disregarded Their July 29 and August 11, 2010 Statements Were False and Misleading

In the context of pleading securities fraud in the Ninth Circuit, confidential witness accounts support a strong inference of scienter where: (1) "'the complaint . . . provide[s] an adequate basis for determining that the witnesses in question have personal knowledge of the events they report'"; and (2) the witness accounts "'themselves [are] indicative of scienter.'" *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2012 U.S. Dist. LEXIS 170704, at *17-*18 (N.D. Cal. Nov. 30, 2012) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)). In analyzing whether a witness would possess the information alleged, the Court must consider, among other things, "'the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), [and] the coherence and plausibility of the allegations.'" *Zucco*, 552 F.3d at 995.

This Court has already held that FE1, a former Oclaro Senior Vice President of Sales during the relevant time frame who reported directly to Couder, was in a position to know the facts set forth in his account. *See* September 21 Order at 11-12 ("Defendants fail in any substantive way to

---

[7]      On April 17, 2013, subsequent to plaintiffs' April 15, 2013 instant opposition to defendants' Motion (Dkt. No. 146), the Ninth Circuit issued an Order and Amended Opinion in *Century Aluminum* (*In re Century Aluminum*, No. 11-15599, 2013 U.S. App. LEXIS 7760 (9th. Cir. Apr. 17, 2013)), holding that in light of the facts in that case, its previous decision in *Century Aluminum*, 704 F.3d 1119, was not inconsistent with its opinion in *Starr*, 652 F.3d 1202.

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                                      - 7 -

1    establish why FE[1]'s statements are lacking in foundation. . . .  Given that FE1 was a former senior

2    vice president responsible for all sales of Oclaro, it is a fair inference that he or she has knowledge

3    about what visibility Oclaro had into customer's needs."); *id*. at 28 ("Plaintiffs have alleged enough

4    to establish that FE1 was in a position within Oclaro with knowledge of Oclaro's sales experiences

5    and practices").  The Court recognized FE1's account confirmed "Oclaro's customers were often

6    reluctant to provide detailed information about their own needs so that suppliers like Oclaro would

7    not dedicate manufacturing capacity to other customer's needs" (*see* September 21 Order at 11) – a

8    fact specifically alleged by plaintiffs to be known to Couder and Turin (*see* ¶¶84(c), (e)) and also

9    now corroborated in the TAC by Turin's false assurance defendants knew customers were not

10   "hedg[ing] their bets" in this exact manner (*see* ¶83).  According to FE1, any meaningful visibility as

11   to customer demand or order trends was realistically only possible for a couple weeks out, with

12   orders that were scheduled for delivery between 14 and 30 days out being a "reach," and beyond

13   that, a "crap shoot."  ¶84(i).  As such, defendants knew or recklessly disregarded that current order

14   levels, which were a component of Oclaro's "order coverage" for the "September quarter," were at a

15   known risk of cancellation that only increased for orders scheduled to be delivered beyond two

16   weeks out.  ¶67.

17        Furthermore, the Court's recognition that according to FE1, these facts were known to those

18   experienced in the Company's industry was "Plaintiffs' strongest allegation on scienter" (*see*

19   September 21 Order at 29) – yet nevertheless fell just short of passing the stringent PSLRA pleading

20   hurdles.  The Court found that even though plaintiffs had adequately alleged defendants knew close

21   customer relationships did not translate into knowledge of customer order strength, they fell short of

22   alleging with particularity that defendants did not know about customer orders or demand in the

23   future.  *Id.*

24        But FE1 has specifically and consistently stated that Couder and Turin knew these

25   contradictory facts, rather than relying on industry experience alone or "assum[ing] the individual

26   defendants were experienced in the industry by virtue of their position[s] alone."  *See* September 21

27   Order at 29.  Yet in light of the Court's characterization of this being plaintiffs' "strongest allegation

28   on scienter," the TAC now specifically alleges Couder's and Turin's extensive expertise in the

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                                    - 8 -

1   industry – a fact they themselves have touted to the public.  Couder boasts on his LinkedIn page, for

2   example, of his "industry expertise" in "optical components," describing Oclaro as an "optical

3   components public company with a major focus on . . . consumer markets."  ¶24.  Oclaro's

4   September 9, 2010 Proxy Statement for the Annual Meeting of Stockholders, incorporated by

5   reference into the Company's FY10 Form 10-K filed with the SEC on September 1, 2010, stated,

6   "Mr. Couder's experience, through nearly 8 years of executive officer service with companies in a

7   high growth phase, gives him a unique perspective on the Company's business."  ¶25.  Similarly,

8   Turin touted on Oclaro's predecessor Bookham's website that he had "more than 20 years of

9   combined accounting and corporate finance experience in the technology industry."  ¶27.  And on

10  his LinkedIn page, he labeled himself as the Company executive that: "Rolled out the Oclaro story to

11  the investor community."  ¶28.  Finally, highlighting the significance of the Company's May 2010

12  Secondary Offering to its overall financial success, Turin further takes credit for having "[r]aised

13  $75M in a 2010 secondary offering, conducted as a 're-branding' of Oclaro."  *Id.*

14      The TAC now also alleges specific facts reported by FE2, Oclaro's former Senior Manager

15  of Product Marketing from June 2009 to July 2011 (including during the Class Period).  ¶84(j).  As

16  part of his/her job responsibilities at the Company, FE2 participated in monthly forecasting meetings

17  attended by Oclaro executives wherein FE2 provided general sales forecasting information as well as

18  specific insight into the circumstances of product orders during the summer of 2010.  *Id.*  These

19  monthly meetings were typically attended by Oclaro's Executive VP of Sales Scott Parker – the

20  Company's highest ranking sales executive that was as senior as CFO Turin – and also, at times,

21  CEO Couder and Chief Operating Officer James Haynes.  *Id.*  Notably, FE2 was ranked high enough

22  in Oclaro's management to attend and contribute to meetings also attended by the CEO of the

23  Company.  *Id.*  FE2's detailed account supports the strong inference defendants knew, or were at

24  least severely reckless in not knowing or turning a culpable "'blind eye'" (*see VeriFone*, 704 F.3d at

25  708) that their statements about "order coverage" were false and misleading because that coverage

26  included "blanket orders."  ¶84(j)-(k); *see also* ¶84(l).

27      According to FE2, "blanket orders" were not actual firm orders that had been placed by

28  customers, but rather were mere commitments to place orders in the future – often times at explicit

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                                    - 9 -

1    risk of cancellation, (as the contracts typically contained "push outs" or "pull ins" clauses).  ¶84(k).

2    Nevertheless, these soft customer commitments were included in the Company's "order coverage"

3    provided to investors by Turin and Couder, with the express purpose of justifying their assurances of

4    strong end-user (*i.e.*, true) demand  – a fact concealed from investors, even as analysts requested and

5    defendants outright refused to provide "absolute level of orders."  ¶¶13, 67, 84(k).  Critically,

6    according to FE2, the inclusion of blanket orders in Oclaro's order coverage provided the basis for

7    defendants' public "bullishness" during the summer of 2010.  ¶¶84(k).

8         If in fact order coverage included blanket orders that had not actually been placed, as

9    plaintiffs have pleaded with specificity based on the account of FE2, this is a major issue defendants

10   must have known about.  The core operations theory can be enough to establish scienter "where the

11   nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that

12   management was without knowledge of the matter." *S. Ferry*, 542 F.3d at 786.  Moreover, Couder

13   even labels himself on his LinkedIn page as the "Active Chairman and CEO of Oclaro which he built

14   through M&A."  ¶24.  This not only further reinforces how critical the ClariPhy and Mintera

15   acquisitions were to the Company, but also critically evidences the involved management style of

16   Oclaro executives.  And furthermore, the fact that defendants were personally involved in close

17   customer relationships also evidences a style of hands-on management as it relates to customer needs

18   and demand that supports a strong inference of scienter.  *See VeriFone*, 704 F.3d at 710 ("the

19   complaint alleges in detail that [the executive defendants] were hands-on managers with respect to

20   operational details and financial statements" (citing *Daou*, 411 F.3d at 1022)); *see also* ¶54

21   (statement by Turin on June 9, 2010: "we're pretty close to our customers and pretty close to what

22   they're doing from a forecast and volume point of view"); ¶83 (statement by Turin on August 11,

23   2010: "Also, we're very close to our customers.  The customer base we support are the major

24   telecomm equipment companies and that's a close relationship.  If I had 500 customers of the same

25   size and you couldn't drill down to the different areas within the business, you would have less

26   visibility.  But we have a great deal of visibility with these guys.").  Couder even assured the market

27   he personally communicated with Oclaro's customers, partially attributing the "bullish" 1Q11

28   guidance issued by defendants on July 29, 2010 to Oclaro's acquisition of Mintera, and stating "I got

1   15 e-mail[s] back from customer[s], this was great because they like the Mintera technology and

2   they want to work with us."  ¶68.  At minimum, as was the case in *VeriFone*, here:  "At the very

3   least, both executives were on notice that there might be issues" or problems with providing order

4   coverage as representing actual, firm orders placed, yet "disclosed neither concern to investors.  To

5   the contrary, [CEO defendant] reassured investors and analysts" – falsely– that was the most

6   meaningful indicator of the customer demand.  704 F.3d at 710.

7       These allegations support a strong inference of actual knowledge or, at the very least,

8   deliberate recklessness – and thus, defendants' scienter as to their July and August 2010 statements.

9   *See, e.g.*, *Plotkin v. IP Axess, Inc. Etc.*, 407 F.3d 690, 700 (5th Cir. 2005) (given the reasonableness

10  of the inference that defendant possessed material facts casting doubt on credibility of facts

11  underlying the allegedly false statement, scienter was adequately alleged); *In re Scholastic Corp.*

12  *Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) ("Where the complaint alleges that defendants knew facts

13  or had access to non-public information contradicting their public statements, recklessness is

14  adequately pled for defendants who knew or should have known they were misrepresenting material

15  facts with respect to the corporate business."); *S. Ferry*, 542 F.3d at 784-86 (scienter may be inferred

16  where the complaint alleges that management was in position to be exposed to factual information

17  within the company that rendered the statements false); *In re Cadence Design Sys., Inc. Sec. Litig.*,

18  692 F. Supp. 2d 1181, 1188 (N.D. Cal. 2010) (allegations that the individual defendant was involved

19  in every large contract is sufficient to adequately allege scienter of false earnings statements).

20      Even if "shortcomings" may exist in the plaintiffs' core operations allegations "***when viewed***

21  ***in isolation***," when "[v]iewing the Complaint as a whole," – which is required – "the court can infer

22  that [defendant] had sufficient core operations knowledge."  *In re Omnivision Techs. Sec. Litig.*, No.

23  C-11-5235 RMW, 2013 U.S. Dist. LEXIS 46032, at *60-*61 (N.D. Cal. Mar. 29, 2013) (emphasis in

24  original).

25

26

27

28

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                                    - 11 -

1

      **B.**    **Each of Defendants' Statements Held by the Court to Be Materially**
           **False and Misleading Issued Throughout the Class Period Concerned**

2

           **the Common Topic of Customer Demand**

3

      Defendants' materially false and misleading statements issued throughout the Class Period

4

(on May 6, June 9, July 29 and August 11, 2010) were each related to and designed to give investors

5

a false picture of true customer demand.  On June 9, 2010, defendants assured investors they knew

6

the strong customer demand of which they boasted was real, end-user demand based on them being

7

"pretty close to customers and pretty close to what they're doing from a forecast and volume point of

8

view."  ¶54; *see* ¶¶53-54.  Then on July 29, 2010 – just eight days after Oclaro announced the

9

acquisition of Mintera, made possible by the receipt of artificially inflated proceeds from the

10

Company's May 2010 Secondary Offering – defendants disclosed orders had declined so

11

dramatically during the month of April 2010 that Oclaro's quarterly book-to-bill ratio for the quarter

12

ending June 2010 had plummeted.  ¶¶67, 72.  Despite this negative announcement of a slowdown in

13

customer demand, defendants blatantly attempted to appease the market by assuring investors

14

defendants were still "very bullish . . . because the demand is there," which was based on "order

15

coverage" of between "85% and 90%" needed to meet the increased 1Q11 forecasts issued that day.[8]

16

¶¶67-68.  But, as was reported by FE2, this "order coverage" also included blanket orders that were

17

actually only promises by customers to place future orders and were known to be at a higher risk of

18

cancellation.  ¶84(k).  In direct contradiction to these facts, defendants successfully led the market to

19

believe order coverage consisted of firm orders, purportedly known to defendants to have minimal

20

risk of cancellation – rather than blanket orders (per FE2) or orders meaningfully susceptible to

21

cancellation two weeks out (per FE1).  *See* ¶75 (July 30, 2010 analyst report stating Oclaro

22

"Management has countered that order coverage in the current quarter [1Q11] already stands at more

23

24

_____

25

[8]      Defendants were also "very bullish . . . because the demand is there" to meet 1Q11 guidance

26

for the products Oclaro acquired along with the strategic acquisitions of ClariPhy and Mintera –
which plaintiffs have consistently alleged were executed using artificially inflated proceeds from the

27

May 2010 Secondary Offering based on false statements therein concerning currently and recently
increasing customer demand.  *See* ¶¶67-68.

28

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                  - 12 -

1 | than 85% so visibility remains strong"); ¶79 (July 30, 2010 analyst report covering Oclaro: "With

2 | roughly 85% of the quarter already in hand in the form of hard orders").

3 |      On August 11, 2010, when defendants were again questioned about the true strength and

4 | firmness of customer demand, they gave the same answer – that Oclaro "[a]s of last week [was] 90%

5 | order covered for this quarter, which is an extraordinary level for our business."  ¶81.  When

6 | specifically asked what "confidence" defendants had "that the order strength that you're seeing

7 | reflects more than double ordering and an inventory refresh" – defendants placated the analysts by

8 | assuring them they had "visibility" into true customer needs at that time because they were "very

9 | close to our customers."  ¶¶82-83.

10 |      Furthermore, it is undisputed, defendants spoke to investors specifically about Oclaro's

11 | "order coverage." *See Va. Bankshares*, 501 U.S. at 1091 (investors expect corporate executives have

12 | knowledge and expertise about the company's business far exceeding the normal investor).  This

13 | imposes a heightened duty on defendants to ensure they spoke accurately, rather than with deliberate

14 | disregard as to the truth or falsity of their statements.  "[O]nce defendants chose to tout" order

15 | coverage figures – especially while refusing to provide actual order levels "they were bound to do so

16 | in a manner that wouldn't mislead investors."  *Berson*, 527 F.3d at 987; *see also In re Gilead Scis.*

17 | *Sec. Litig.*, 536 F.3d 1049, 1052 (9th Cir. 2008) (omitting material facts when "highlighting" a

18 | product's "success made a true statement (that demand was strong) also a misleading one").

19 |      Finally, and critically, FE1's account ***corroborates*** FE2 in that both confirm, contrary to

20 | defendants' misleading message to the market, that "order coverage" did ***not*** represent firm orders

21 | that had been placed by Oclaro customers and were subject to minimal risk of cancellation.

22 | **C.**    **The TAC's Additional Motive Allegations Further Support a Strong**
       **Inference of Scienter**

23 | 

24 |      It is well-settled law that neither motive nor insider sales are required to allege scienter.

25 | *Matrixx*, 131 S. Ct. at 1324; *see Diamond Foods*, 2012 U.S. Dist. LEXIS 170704, at *23 (the lack of

26 | insider sales was "not dispositive" as to scienter).

27 |      Critically, however, insider trading rules apply equally to corporations offering securities for

28 | profit and individuals who stand to gain personally.  *WPP Lux. Gamma Three Sarl v. Spot Runner,*

1   *Inc.*, 655 F.3d 1039, 1056 (9th Cir. 2011) ("'corporate issuer in possession of material nonpublic

2   information, must, like other insiders in the same situation, disclose that information to its

3   shareholders or refrain from trading with them'" (citing *McCormick v. Fund Am. Cos.*, 26 F.3d

4   869, 876 (9th Cir. 1994))), *cert. denied*, _U.S._, 132 S. Ct. 2713 (2012); *Shaw v. Digital Equip.*

5   *Corp.*, 82 F.3d 1194, 1204 (1st Cir. 1996) (corporate issuers may not engage in purchase or sale of

6   its own securities while in possession of material non-public information, "[o]therwise, a corporate

7   issuer selling its own securities would be left free to exploit its informational trading advantage, at

8   the expense of investors, by delaying disclosure of material nonpublic negative news until after

9   completion of the offering").  Thus, the corporate insider trading engaged in by the defendants with

10  respect to Oclaro's May 2010 Secondary Offering is equally probative of scienter as personal insider

11  trading.

12  **IV.    PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO AMEND**

13       Should the Court find that the TAC fails to adequately allege scienter with respect to

14  defendants' July 29 and August 11, 2010 misstatements, plaintiffs respectfully request leave to

15  amend to allege additional facts uncovered during their investigation and discovery, including but

16  not limited to testimony corroborating FE1's testimony that close relationships with customers did

17  not provide customer demand.[9]

18  **V.    CONCLUSION**

19       Because the TAC has alleged with the requisite specificity that defendants acted with scienter

20  when making false and misleading statements on July 29 and August 11, 2010, plaintiffs respectfully

21

22

23

24

25

26  [9]    Although Mr. Haynes is not currently named as a defendant in the TAC, he may again be added as a defendant in this matter should it become necessary and appropriate in light of the facts

27  and evidence.  Defendants' request for dismissal of Mr. Haynes with prejudice at this time should therefore be denied.  See MTD at 14-15.

28

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                    - 14 -

1 | request the Court deny defendants' Motion in its entirety.

2 | DATED:  April 18, 2013                              Respectfully submitted,

3 |                                                                    ROBBINS GELLER RUDMAN
   |                                                                       & DOWD LLP
4 |                                                                    SHAWN A. WILLIAMS
   |                                                                    SUNNY S. SARKIS
5 |

6 |
   |                                                                             s/ Shawn A. Williams
7 |                                                                    SHAWN A. WILLIAMS

8 |                                                                    Post Montgomery Center
   |                                                                    One Montgomery Street, Suite 1800
9 |                                                                    San Francisco, CA  94104
   |                                                                    Telephone:  415/288-4545
10 |                                                                   415/288-4534 (fax)

11 |                                                                   ROBBINS GELLER RUDMAN
    |                                                                      & DOWD LLP
12 |                                                                   JULIE A. KEARNS
    |                                                                   655 West Broadway, Suite 1900
13 |                                                                   San Diego, CA  92101
    |                                                                   Telephone:  619/231-1058
14 |                                                                   619/231-7423 (fax)

15 |                                                                   Lead Counsel for Plaintiffs

16 |                                                                   ROBERT M. CHEVERIE & ASSOCIATES
    |                                                                   GREGORY S. CAMPORA
17 |                                                                   Commerce Center One
    |                                                                   333 E. River Drive, Suite 101
18 |                                                                   East Hartford, CT  06108
    |                                                                   Telephone:  860/290-9610
19 |                                                                   860/290-9611 (fax)

20 |                                                                   HOLZER HOLZER & FISTEL, LLC
    |                                                                   MICHAEL I. FISTEL, JR.
21 |                                                                   200 Ashford Center North, Suite 300
    |                                                                   Atlanta, GA  30338
22 |                                                                   Telephone:  770/392-0090
    |                                                                   770/392-0029 (fax)
23 |

24 |                                                                   DYER & BERENS LLP
    |                                                                   ROBERT J. DYER III
    |                                                                   JEFFREY A. BERENS
25 |                                                                   303 East 17th Avenue, Suite 810
    |                                                                   Denver, CO  80203
26 |                                                                   Telephone:  303/861-1764
    |                                                                   303/395-0393 (fax)

27 |
    |                                                                   Additional Counsel for Plaintiff
28 |

CORRECTED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD
AMENDED COMPLAINT - C11-02448-EMC                                                                      - 15 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 18, 2013.

<u>s/ Shawn A. Williams</u>
SHAWN A. WILLIAMS

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:shawnw@rgrdlaw.com

833733_1

## Mailing Information for a Case 3:11-cv-02448-EMC

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Gidon M. Caine**
  gidon.caine@alston.com,joe.tully@alston.com,kathy.kirk@alston.com,chuck.mattson@alston.com

- **Jessica Perry Corley**
  jessica.corley@alston.com

- **Michael I. Fistel , Jr**
  mfistel@holzerlaw.com

- **Frank James Johnson**
  frankj@johnsonandweaver.com,paralegal@johnsonandweaver.com,shawnf@johnsonandweaver.com,Ceciliar@johnsonandweaver.com

- **Julie A. Kearns**
  jkearns@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Tina Mehr**
  tina.mehr@alston.com

- **Brian O. O'Mara**
  bo'mara@csgrr.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,office@punzalanlaw.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Sunny September Sarkis**
  Ssarkis@rgrdlaw.com

- **Andrew Townsend Sumner**
  andy.sumner@alston.com

- **Joseph G Tully**
  joe.tully@alston.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,erinj@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Robert                  J. Dyer                                    , III
Dyer & Berens LLP
303 East 17th Avenue, Suite 300
Denver, CO 80203
```