GIDON M. CAINE (Cal. State Bar No. 188110)
ALSTON & BIRD LLP
275 Middlefield Road
Suite 150
Menlo Park, California 94025-4008
Telephone: (650) 838-2000
Facsimile: (650) 838-2001
gidon.caine@alston.com

Additional counsel on signature page

Counsel for Defendants
OCLARO, INC., ALAIN COUDER,
JERRY TURIN, and JAMES HAYNES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CURTIS and CHARLOTTE WESTLEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCLARO, INC., et al.,<br><br>Defendants. | Case No. C11-2448-EMC (NC)<br>and related consolidated action<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| IN RE OCLARO, INC. DERIVATIVE LITIGATION | Lead Case No. C11-3176-EMC (NC)<br>(Derivative Action) |
| This Document Relates to:<br><br>*Westley v. Oclaro, Inc.*,<br>No. C11-02448-EMC (NC) | Date: May 16, 2013<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. PRELIMINARY STATEMENT ........ 1

II. ARGUMENT ........ 2

A. The Opposition Fails to Explain How the Third Amended Complaint Pleads a Strong Inference of Scienter. ........ 2

1. Allegations Attributed to Two Former Oclaro Employees Do Not Support a Strong Inference of Scienter. ........ 2

2. Lead Plaintiff's Recycled Motive Allegations Still Do Not Support a Strong Inference of Scienter. ........ 5

3. The "Core Operations" Allegations Still Do Not Support a Strong Inference of Scienter. ........ 5

4. Falsity Does Not Establish Scienter. ........ 8

B. The Opposition Never Addresses Plausible Opposing Inferences Identified by Defendants. ........ 10

C. After Four Failed Attempts All Claims Relating to the July/August Statements Should Now Be Dismissed With Prejudice. ........ 12

D. James Haynes Should Be Dismissed from the Action with Prejudice. ........ 12

III. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ....................................................9

*Chubb Custom Ins. Co. v. Space Sys./ Loral, Inc.*,
710 F.3d 946, 973 n.14 (9th Cir. 2013). ....................................................12

*Gonzalez v. Arizona*,
677 F.3d 383 (9th Cir. 2012) ....................................................1

*In re Cadence Design Sys., Inc. Sec. Litig.*,
654 F. Supp. 2d 1037 (N.D. Cal. 2009) ....................................................5, 7

*In re Cadence Design Sys., Inc. Sec. Litig.*,
692 F. Supp. 2d 1181 (N.D. Cal. 2010) ....................................................7

*In re Century Aluminum Co. Sec. Litig.*,
No. 11-15599, 2013 WL 1633094 (9th Cir. Apr. 17, 2013) ....................................................10

*In re Century Aluminum Sec. Litig.*,
704 F.3d 1119 (9th Cir. 2013) ....................................................10, 11

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................................................9

*In re Omnivision Techs., Inc. Sec. Litig.*,
No. C-11-5235 RMW, 2013 WL 1334250 (N.D. Cal. Mar. 29, 2013) ....................................................8

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)....................................................7

*In re Verifone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ....................................................7, 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................................................7

*Plotkin v. IP Axess, Inc. Etc.*,
407 F.3d 690 (5th Cir. 2005) ....................................................7

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ....................................................6, 7

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ....................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................1, 10, 11

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991)....................9

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
655 F.3d 1039 (9th Cir. 2011)....................5

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)....................3, 4, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)....................10

Oclaro, Inc. ("Oclaro," or the "Company"), Alain Couder, Jerry Turin, and James Haynes submit this Reply Memorandum of Points and Authorities in support of their motion to dismiss all claims relating to the July and August 2010 statements challenged in the Third Amended Complaint.

## I. PRELIMINARY STATEMENT

Defendants established in their opening memorandum that the Third Amended Complaint's repackaged allegations fail to cure the fundamental defects leading this Court to dismiss three prior attempts by Lead Plaintiff to plead an actionable claim as to the July/August statements. The Opposition to the pending motion does nothing to salvage the deficient pleading or to overcome this Court's prior conclusion that Lead Plaintiff has "failed to sufficiently allege facts establishing a strong inference of scienter." [Doc. 107, at 1.] It relies on inapposite case law, or none at all, for key elements of its argument. It recycles allegations and arguments previously rejected by this Court. It does not address plausible opposing inferences of scienter, as required by the Supreme Court in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).[1]

Lead Plaintiff has had four opportunities to plead an actionable claim as to the July/August statements challenged by this motion. Despite clear guidance from this Court, it has failed four times to plead a strong inference of scienter that is plausible, cogent and at least as compelling as opposing inferences of non-fraudulent intent. It is clear beyond peradventure that Lead Plaintiff cannot plead this core element of a securities claim with respect to these statements. It is long past time to conclude this portion of the action.

All claims against Mr. Haynes should be dismissed with prejudice. Lead Plaintiff abandoned those claims when it did not name him as a defendant in the First Amended Complaint, the Second Amended Complaint, or the Third Amended Complaint.

---

[1] As noted in the motion, defendants respectfully and emphatically disagree with this Court's prior ruling that the Second Amended Complaint properly pleads other elements of a securities claim. [Def. Mem. at 1, n.2.] Lead Plaintiff suggests that the law of the case doctrine somehow applies to this motion. It does not. The motion addresses the narrow issue of scienter with regard to the July/August statements, and the amendments made in the Third Amended Complaint which attempt to cure the deficiencies identified by this Court in its prior orders. Even were that not the case, the doctrine does not preclude this Court from revisiting its own prior orders or correcting a ruling that works an injustice as a result of subsequent authority. *See, e.g.*, *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012), *cert. granted*, 133 S. Ct. 476, 184 L. Ed. 2d 296 (2012).

## II. ARGUMENT

### A. The Opposition Fails to Explain How the Third Amended Complaint Pleads a Strong Inference of Scienter.

Defendants established in their opening memorandum that the Third Amended Complaint does not add sufficient new allegations to cure the prior deficiencies noted by this Court in its prior orders. [Def. Mem. at 6-14.] In opposition, Lead Plaintiff argues that the Third Amended Complaint pleads a strong inference of scienter in four ways: (1) through allegations attributed to a former Oclaro product marketing manager identified as FE2; (2) through allegations regarding defendants' experience in the industry; (3) through allegations regarding defendants' motive; and (4) through allegations concerning defendants' alleged pattern of issuing misleading statements. [Oppn. at 2-3.] None of these allegations supports a strong inference of scienter, either individually or collectively.

#### 1. Allegations Attributed to Two Former Oclaro Employees Do Not Support a Strong Inference of Scienter.

The Third Amended Complaint contains allegations supposedly attributed to two former Oclaro employees, designated as FE1 and FE2. Defendants explained in their motion why these allegations do not support a strong inference of scienter. [Def. Mem. at 6-9.] The Opposition does nothing to rebut this effectively.

##### a. The Third Amended Complaint's Recycled Allegations as to FE1 Remain Inadequate.

In its September 21, 2012 Order, this Court held that the statements attributed to FE1 in the Second Amended Complaint were conclusory and thus not indicative of scienter. [Doc. 79, at 28-29.] Rather than provide additional allegations attributed to FE1 in the Third Amended Complaint, Lead Plaintiff recycles its prior allegations attributed to FE1 in the apparent hope that they will be more palatable this time around. They are not. Lead Plaintiff's failure to even address this argument in the Opposition is an implicit concession that it has nothing to add to support its position on the issue.

**b. The Third Amended Complaint's New Allegations as to FE2 Do Not Satisfy Either Prong of the *Zucco* Standard.**

The Third Amended Complaint adds allegations, purportedly attributed to a new confidential witness designated as FE2. TAC ¶ 84(j)-(k). FE2 apparently is a former Senior Manager of Product Marketing at Oclaro who purportedly stated to Lead Plaintiff that the Company's order coverage numbers consisted of "blanket orders" rather than firm orders and that blanket orders were submitted by customers for the purpose of securing beneficial pricing. *Id.* According to the Third Amended Complaint, FE2 also allegedly stated that the phrase "order coverage" was used internally at Oclaro to describe some combination of blanket orders and actual purchase orders, and that blanket orders included "push out" and "pull in" clauses. *Id.* The Third Amended Complaint attributes to FE2 an allegation that Oclaro's sales projections were "all about getting firm orders." *Id.*

Defendants established in their motion that the allegations attributed to FE2 do not meet the minimum pleading requirements for confidential witnesses set forth by the Ninth Circuit in *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009). [Def. Mem. at 8-9.] Those requirements are: (i) the complaint must describe the confidential witness with sufficient particularity to support the probability that a person in the position occupied by the confidential witness would possess the information alleged; and (ii) the statements reported by the confidential witness, themselves, must be indicative of scienter. *Zucco*, 552 F.3d at 995. The Third Amended Complaint does not meet either of these two prongs as to FE2.

With respect to the first prong, defendants pointed out that the allegations attributed to FE2 do not meet the *Zucco* standard. [Def. Mem. at 8.] Defendants noted that the Third Amended Complaint alleges that FE2's knowledge derived from participation at monthly forecast meetings, but it does not plead that Mr. Turin—the lone speaker of the July/August statements—even attended those meetings. As to Mr. Couder, the Third Amended Complaint alleges that "at times" he attended those meetings, but there are no allegations as to when he attended the meetings or what was discussed at the meetings he attended. There also are no allegations that the meetings even involved discussions of "blanket orders" or customer visibility. The motion observed that FE2's purported position as "Senior Manager of Product Marketing" does not provide validation that FE2 had

personal knowledge of Oclaro's sales numbers or its customer visibility, much less defendants' state of mind or how they were using terms like "order coverage" in their public statements. [*Id.*] Lead Plaintiff does not dispute these shortcomings in its Opposition.

With respect to the second prong, defendants pointed out in their motion that allegations attributed to FE2 in the Third Amended Complaint are not indicative of scienter. [*Id.* at 9.] In response, Lead Plaintiff offers the *ipse dixit* assertion that FE2's statements regarding "blanket orders" support the inference that defendants intentionally concealed the fact that order coverage was not actual firm orders. [Oppn. at 9-10.] Lead Plaintiff is not correct. The Third Amended Complaint fails to plead particularized facts that the term "order coverage" as understood by FE2 was understood and used in the same way by Mr. Turin. In fact, the July 29, 2010 conference call transcript demonstrates that Mr. Turin distinguished between "order coverage" and "absolute level of orders." [Ex. 4, at 10.]

Moreover, the Third Amended Complaint fails to plead particularized facts showing that blanket orders were included in the Q1 FY2011 order coverage numbers, or which orders were, or what the magnitude of such orders was, or their impact on the order coverage number given by Mr. Turin. The Third Amended Complaint fails to plead particularized facts that there were "pull ins" or "push outs" that impacted the Q1 FY2011 numbers at the time Mr. Turin spoke. The Third Amended Complaint does not even allege that the actual order coverage numbers cited by Mr. Turin were false—an unsurprising fact given that there is no dispute that Oclaro met its revenue forecasts during this quarter for the fifth fiscal quarter in a row. [Doc. 63, at 22.] As with FE1, the conclusory allegations attributed to FE2 in the Third Amended Complaint do not meet the second prong of the *Zucco* test.

* * * * *

In sum, the allegations in the Third Amended Complaint attributed to the two confidential witnesses fail to support a strong inference of scienter.

**2. Lead Plaintiff's Recycled Motive Allegations Still Do Not Support a Strong Inference of Scienter.**

Defendants pointed out in their motion that Lead Plaintiff still has not identified any motive for Mr. Turin's allegedly false statements regarding customer visibility. [Def. Mem. at 9-10.] Defendants also established that Mr. Couder's and Mr. Turin's lack of stock sales during the relevant time period provide a plausible opposing inference of non-fraudulent intent. [*Id.* at 10-11.] Unable to dispute these basic facts, Lead Plaintiff now reprises its argument that Oclaro's May 2010 Secondary offering somehow demonstrates motive for statements made in July and August 2010.[2] Leaving aside how such allegations would establish scienter as to any individual defendant, the more problematic issue for Lead Plaintiff is that this argument was made and rejected by this Court in its September 21, 2012 order. [Doc. 79, at 27.] This Court did not contemplate a re-argument of rejected scienter allegations when it permitted Lead Plaintiff a "final opportunity" to amend its pleading to state an actionable claim as to the July/August statements.

**3. The "Core Operations" Allegations Still Do Not Support a Strong Inference of Scienter.**

Defendants established in their motion that the "core operations" allegations in the Third Amended Complaint were merely the same repackaged allegations this Court found inadequate in the Second Amended Complaint. [Def. Mem. at 11-12.] Defendants noted that the Third Amended Complaint does not plead particularized facts showing that Mr. Couder and Mr. Turin had access to internal information contradicting the July/August statements or that the allegedly misstated information was "of such prominence it would be absurd to suggest that management was without knowledge of the matter," as is required to support an inference of scienter. [*Id.* (citing *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1049 (N.D. Cal. 2009)].[3]

---

2 The only Ninth Circuit case relied upon by Lead Plaintiff to support this theory is *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1056 (9th Cir. 2011). In *WPP*, the Ninth Circuit did not hold that a company's stock sales establish motive or support a strong inference of scienter. Indeed, the Ninth Circuit actually affirmed the district court's holding that the complaint did not plead a strong inference of scienter.

3 Contrary to Lead Plaintiff's assertion, this Court never held that the Second Amended Complaint's "core operations" allegations "fell just short of passing the stringent PSLRA pleading hurdles." [Oppn. at 8.] In reality, this Court held that while Lead Plaintiff's core operations argument was perhaps its strongest, it was "[in]sufficient to give rise to a *strong*

Lead Plaintiff reverts to the same argument twice rejected by this Court: that, as a result of Mr. Couder's and Mr. Turin's industry experience, they must have known that Oclaro did not have good customer visibility.[4] [Oppn. at 10-11.] Lead Plaintiff does not—and cannot—dispute that the bulk of its allegations underlying its "core operations" argument simply were copied and pasted from the Second Amended Complaint. [*See* Oppn. 10-11 (citing TAC ¶ 54 (previously SAC ¶ 48); TAC ¶ 83 (previously SAC ¶ 75); TAC ¶ 68 (previously SAC ¶ 60))]. Lead Plaintiff concedes that its core operations theory has shortcomings.[5] [Oppn. at 11.] That is an understatement.

A complaint that relies on the core operations theory must contain particular allegations showing that the defendants had actual access to information contradicting the allegedly false statement. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008). The Third Amended Complaint does not make this showing. There still are no particularized allegations, for example, as to what was said in any briefing or meeting, the specific contents of any internal reports, or that defendants had access to other internal information that contradicted Mr. Turin's public statements. The Third Amended Complaint still does not contain any allegations showing that Mr. Couder and Mr. Turin "would necessarily know details such as precisely how far out in advance Oclaro knew of customer needs." [Doc. 79, at 29.]

Instead, the only new allegations included in the Third Amended Complaint on this issue are benign references to general statements from Mr. Couder's and Mr. Turin's LinkedIn pages, a Form 10-K, and the website of Oclaro's predecessor, Bookham, Inc., describing Mr. Couder's and Mr. Turin's general industry experience. [Oppn. 8-11.] These types of allegations, however, are exactly the type that have been held insufficient to support a strong inference of scienter. For example, in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008), the Ninth Circuit held that

---

inference of scienter." [Doc. 79, at 29.]

4 This Court rejected the argument both on the motion and on Lead Plaintiff's motion for reconsideration. [Doc. 79, at 29; Doc. 107, at 2-3.]

5 There is a certain poignancy to this admission, as it was precisely Lead Plaintiff's advocacy of this flawed theory of scienter that convinced this Court to proceed forward with expensive and time-consuming discovery on the May/June statements.

where a complaint relies on allegations that management had an important role in the company but does not contain detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA's standards for pleading scienter. Similarly, in *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008), the Ninth Circuit again reiterated that view when it held that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." Here, Mr. Couder's and Mr. Turin's industry experience simply does not support the notion that they were aware Oclaro did not have good customer visibility.

Lead Plaintiff's reliance on *In re Verifone Holdings, Inc. Securities Litigation*, 704 F.3d 694, 698 (9th Cir. 2012), does not compel a different result. There, the complaint alleged that the defendant CEO and CFO consciously ignored the defendant company's accounting staff as they made improper multi-million dollar adjustments to internal reports to bring reported results in line with analyst's expectations. *Id.* at 697. The court held that the complaint pleaded a strong inference of scienter because, among other things, it contained particularized allegations regarding defendants' access to contradictory information, including allegations that the defendants reviewed the internal reports, which tracked changes to the reports, on a day-to-day basis.[6]

In sharp contrast, the Third Amended Complaint does not contain particularized allegations that defendants had access to contradictory internal information about the strength of Oclaro's customer visibility. The only allegations in the Third Amended Complaint on this issue are those

---

[6] Lead Plaintiff's reliance on *In re Cadence Design Systems, Inc. Securities Litigation*, 692 F. Supp. 2d 1181 (N.D. Cal. 2010) is similarly misplaced. In *Cadence*, the court held that the complaint alleged a strong inference of scienter with respect to two transactions that were not accounted for properly because the complaint alleged that the defendant was one of only five officers who worked on the transactions, and the transactions were among the largest deals of their respective quarters. *Id.* at 1192. No such allegations are pleaded in the Third Amended Complaint. Lead Plaintiff has not alleged that Mr. Couder or Mr. Turin worked closely with specific customers or that the strength of customer visibility was of such importance that Mr. Couder and Mr. Turin must have known that it was not good. *Plotkin v. IP Axess, Inc. Etc.*, 407 F.3d 690 (5th Cir. 2005) and *In re Scholastic Corp. Securities Litigation*, 252 F.3d 63 (2d Cir. 2001), are both out of circuit cases and thus do not undermine *S. Ferry or Metzler*. Further, neither *Plotkin* nor *Scholastic* analyzed scienter under a "core operations" framework.

regarding defendants' general experience in the industry and those that were previously considered and rejected by this Court in the September 21, 2012 Order and again on reconsideration. As the Ninth Circuit cases cited by defendants make clear, that is plainly not enough. Lead Plaintiff's core operations theory is again deficient, whether considered in isolation or in connection with Lead Plaintiff's other scienter allegations.[7]

**4. Falsity Does Not Establish Scienter.**

In a last-ditch effort to meet the PSLRA's heightened pleading standards, Lead Plaintiff argues that a strong inference of scienter is established in this case because defendants have a purported "tendency" to make false and misleading statements regarding customer demand.[8] [Oppn. at 2-3, 11-13.] Once again, Lead Plaintiff conflates falsity and scienter and posits that scienter is established by pointing to falsity. This Court ruled otherwise in its January 10, 2013 Order when it

---

[7] Lead Plaintiff's reference to *In re Omnivision Technologies, Inc. Securities Litigation*, No. C-11-5235 RMW, 2013 WL 1334250 (N.D. Cal. Mar. 29, 2013) does not change this result. [Oppn. at 11.] In *Omnivision*, the court simply held that insufficient core operations allegations may be considered as part of the court's holistic review of scienter. *Id.* at 20. Moreover, the allegations in *Omnivision* were far more particularized than those contained in the Third Amended Complaint. They included allegations that: (i) the company's mobile phone segment accounted for 65% of its revenue, a large part of which came from smartphone component sales; (ii) the smartphone market was the company's "number one priority"; (iii) Apple's iPhone represented a significant business opportunity for the company; (iv) the company held weekly management meetings attended by the defendants and they were part of the company's trusted inner circle; (v) the company worked closely with customers during all stages of the product cycle; (vi) the defendants worked with the company's production teams on a daily basis; (vii) the company held weekly meetings to review the status of its business relationship with Apple; (viii) the defendants participated in weekly meetings with Apple representatives and there was historically a close relationship between the two companies; and (ix) all information disseminated to the public required the defendants' approval and the defendants controlled how and what the company communicated to investment analysts. According to detailed statements attributed to confidential witnesses, the defendants also had a hands-on management style and that when problems arose between the company and Apple, defendants would visit Apple's premises. *Id.* at 18. Despite these allegations, the court held that the plaintiff's core operations argument, on its own, was insufficient to support a strong inference of scienter because (i) there were no allegations of specific information that was communicated to the defendants; (ii) the allegations focused heavily on one defendant and very little on the other defendants; and (iii) many of the allegations came from confidential witnesses. *Id.* at 20.

[8] Lead Plaintiff states in its opposition that defendants failed to address a public statement allegedly made by Mr. Couder on June 15, 2010 regarding demand for 40Gpbs. [Oppn. at 2-3.] This statement, however, is not even alleged to be actionably false or misleading. The statement is also outside the relevant time period.

stated that "falsity in and of itself does not establish scienter." [Doc. 107, at 3.][9]

More importantly, the underlying premise of Lead Plaintiff's theory is demonstrably false: it cannot even establish a false statement concerning customer demand without distorting the record and its own allegations.[10] For example, the allegations in the Third Amended Complaint attributed to the two confidential witnesses actually validate the accuracy of the July/August statements concerning customer visibility. *See, e.g.*, TAC ¶ 84(h) ("FE1 further reported that defendants' statements that they were very close to customers . . . were accurate to the extent that it was true Turin regularly met with top executives from Oclaro's key customer accounts.").

Finally, what Lead Plaintiff does not reveal is that this Court already considered and rejected each of the allegations underlying this argument in its September 21, 2012 Order, and again on reconsideration. At bottom, this is nothing more than a repackaged argument based on re-pleaded allegations from the Second Amended Complaint. [*See* Oppn. at 11-13 (citing TAC ¶¶ 53-54 (previously SAC ¶¶ 47-48); TAC ¶¶ 67, 72 (previously SAC ¶¶ 59, 64); TAC ¶¶ 67-68 (previously SAC ¶¶ 59-60); TAC ¶ 75 (previously SAC ¶ 67); TAC ¶ 79 (previously SAC ¶ 71); TAC ¶ 81 (previously SAC ¶ 73))].

---

9 Lead Plaintiff's reference to *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 987 (9th Cir. 2008), and *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008) does not change this result. The holdings cited by Lead Plaintiff from these decisions were made in connection with each court's analysis of falsity, rather than scienter. In fact, *Virginia Bankshares* and *Gilead* did not even discuss scienter.

10 Lead Plaintiff cannot establish scienter by embellishing its own pleaded allegations. For example, Lead Plaintiff states in the Opposition:

> [J]ust eight days after Oclaro announced the acquisition of Mintera, made possible by the receipt of artificially inflated proceeds from the Company's May 2010 Secondary Offering – defendants disclosed orders had declined so dramatically during the month of April 2010 that Oclaro's quarterly book-to-bill ratio for the quarter ending June 2010 had plummeted.

[Oppn. At 12.] Defendants never stated that orders declined dramatically. Mr. Couder and Mr. Turin stated only that there was a "little bit of a slowdown in early April" and that "April in terms of orders was a little slow." [Ex. 4, at 10.] Lead Plaintiff is the one who claims that this slowdown was massive, not defendants. Similarly, not once did defendants state that Oclaro's book-to-bill ratio declined as a result of declining orders.

**B. <u>The Opposition Never Addresses Plausible Opposing Inferences Identified by Defendants</u>.**

Defendants explained in their motion that even if Lead Plaintiff could somehow show that the new allegations in the Third Amended Complaint provide some evidence of scienter, that is not good enough. Instead, Lead Plaintiff is required to show that such an inference is both a strong inference and that it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *Zucco*, 552 F.3d at 991("the court must take into account plausible opposing inferences."); *In re Century Aluminum Co. Sec. Litig.*, 704 F.3d 1119, 1122-23 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.").

Lead Plaintiff spends more than a page of its Opposition criticizing the Ninth Circuit's original decision in *Century Aluminum*, 704 F.3d at 1122-23, as inconsistent with this Circuit's decision in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). [Oppn. at 6-7.] On April 17, 2013, the Ninth Circuit, on a petition for rehearing, held that *Century Aluminum* is indeed consistent with *Starr*. The Ninth Circuit held:

> When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*. Here, plaintiffs' allegations remain stuck in "neutral territory," because they do not tend to exclude the possibility that their shares came from the pool of previously issued shares.
>
> This holding is consistent with our opinion in *Starr* . . . where there are two *plausible* explanations in contention. If there are two alternative explanations, one advanced by defendants and the other advanced by plaintiff, *both of which are plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Here, however, plaintiffs' explanation is merely possible rather than plausible. To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation. . . . Plaintiffs have not offered allegations of this nature here.

*In re Century Aluminum Co. Sec. Litig.*, No. 11-15599, 2013 WL 1633094, at *3-4 (9th Cir. Apr. 17,

2013) (internal citations and quotation marks omitted).[11]

The Ninth Circuit's latest opinion in *Century Aluminum* is squarely within controlling Supreme Court authority requiring that a complaint include allegations giving rise to an inference of scienter that is "*more than merely plausible* or reasonable—it must be *cogent* and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, at 324 (2007) (emphasis added).

Defendants identified a number of opposing inferences in their motion that were far more cogent and compelling than those pleaded in the Third Amended Complaint. They include (i) Oclaro's ability to meet its revenue forecast for five quarters in a row; (ii) the positive customer reception during the fourth quarter to the Mintera acquisition; (iii) the allegedly poor last few weeks of Q1 FY2011; (iv) statements from defendants confirming that they had reasonable and plausible explanations for believing that Oclaro had relatively good customer visibility; and (v) defendants' lack of stock sales during the relevant time period. [Def. Mem. at 13.]

Despite this weighing of inferences being perhaps the most significant issue on a challenge to the sufficiency of scienter allegations, Lead Plaintiff simply ignores the issue in the Opposition. Lead Plaintiff does not address its scienter allegations in the context of *Tellabs* and its progeny, nor does it even acknowledge, much less address, the opposing inferences proffered by defendants. Through its sustained silence, Lead Plaintiff concedes that it cannot overcome the overwhelming inference of non-fraudulent intent supported by these allegations. Lead Plaintiff has failed for the fourth time to plead a strong inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. Accordingly,

---

[11] It was for this reason that defendants argued at the December 11, 2012 motion for reconsideration hearing that Lead Plaintiff was required to cite to more than just the decline in Oclaro's book-to-bill ratio to support even a plausible explanation for scienter with respect to the May/June statements. As defendants stressed, Lead Plaintiff's allegations regarding Oclaro's book-to-bill ratio were possible, but they remained "stuck in neutral territory." In other words, the Second Amended Complaint failed to exclude the possibility that Oclaro's decline in book-to-bill resulted, not from a decline in demand, but rather from Oclaro's increased capacity. Although this Court did not find this argument persuasive, [Doc. 107, at 8-9], that was before the Ninth Circuit, in its most recent *Century Aluminum* opinion, confirmed that Lead Plaintiff was required to do more.

they fail to plead an actionable claim as to the July/August statements, and the Third Amended Complaint should be dismissed.

**C. <u>After Four Failed Attempts All Claims Relating to the July/August Statements Should Now Be Dismissed With Prejudice</u>.**

Despite nearly three years and four chances to plead an actionable claim and clear direction as to the deficiencies in their prior pleadings, Lead Plaintiff still has failed to meet its pleading burden as to the statements alleged to have been made by Mr. Turin in July and August 2010. As defendants noted in their opening memorandum, this failure is strong confirmation that Lead Plaintiff cannot plead additional facts to meet its burden and that further amendment would be futile. [Def. Mem. at 14.] Lead Plaintiff does not argue otherwise in the Opposition, nor does it proffer a single allegation that it would add to the Third Amended Complaint if permitted to amend. Instead, in a one-sentence statement at the end of the Opposition, Lead Plaintiff requests additional leave to amend if this Court is inclined to grant the motion for the fourth time. Enough is enough—Lead Plaintiff was given "one final opportunity to amend [its] complaint" by this Court in its September 21, 2012 Order. [Doc. 79, at 35.] It is time to end this portion of the case for good.

**D. <u>James Haynes Should Be Dismissed from the Action with Prejudice</u>.**

Defendants have moved to dismiss with prejudice all claims against Mr. Haynes. He was named as a defendant in the original complaint, but he is not, and was not, named as a defendant in the First Amended Complaint, the Second Amended Complaint, or the Third Amended Complaint. In light of these facts, defendants cited recent Ninth Circuit authority establishing that having abandoned its claims against Mr. Haynes, he should now be dismissed with prejudice from the litigation. *See Chubb Custom Ins. Co. v. Space Sys./ Loral, Inc.*, 710 F.3d 946, 973 n.14 (9th Cir. 2013) (claim abandoned where district court dismissed complaint with leave to amend and plaintiff did not voluntarily renew the claim). Lead Plaintiff presents no authorities or argument to the contrary; instead, it suggests that it should be permitted to keep him in abeyance in case it decides to add him as a defendant later in the case. [Oppn. at 14, n.8.] That is exactly backwards. Lead Plaintiff was required to have a good faith basis for asserting the claims against Mr. Haynes before it

sued him. It does not get to sue him and then string him along for years while they hunt for a claim. Mr. Haynes should be dismissed with prejudice from the litigation.

**III. CONCLUSION**

For the foregoing reasons and the reasons set forth in the opening memorandum, this Court should dismiss with prejudice all claims relating to the July/August Statements and all claims of any nature against James Haynes.

Respectfully submitted,

**ALSTON & BIRD LLP**

DATED: Menlo Park, California
April 22, 2013

By: /s/ Gidon M. Caine

GIDON M. CAINE (Cal. State Bar No. 188110)
ALSTON & BIRD LLP
275 Middlefield Road
Suite 150
Menlo Park, California 94025-4008
Telephone: (650) 838-2000
Facsimile: (650) 838-2001
gidon.caine@alston.com

and

JESSICA P. CORLEY (admitted *pro hac vice*)
ANDREW T. SUMNER (admitted *pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
jessica.corley@alston.com
andy.sumner@alston.com

Counsel for Defendants OCLARO, INC., ALAIN COUDER, JERRY TURIN, and JAMES HAYNES